[L. A. No. 2499.   In Bank.—June 6, 1910.]

CITY OF PASADENA (a Municipal Corporation),Petitioner,
v. SUPERIOR COURT OF LOS ANGELES COUNTY
and HON. WALTER BORDWELL, Judge, Respondents.

INJUNCTION—REMOVAL BY CITY OF TELEPHONE AND TELEGRAPH APPLI-
    ANCES—JUDGMENT FOR CITY—INJUNCTION PENDING APPEAL—PRO-
    HIBITION.—In an action by telephone and telegraph companies to
    enjoin a city from removing their long-continued poles and wires
    from its streets, in which a preliminary injunction was granted at a
    hearing, though not issued, and concurrently with the judgment for
    defendant, though not part of it, the court, upon stipulation of the
    parties, made an order continuing the injunction pending the appeal

of plaintiffs, on condition that plaintiffs secured stated deposits to be fixed by the court as the value of the use of the franchise pending the appeal, which was complied with by them,—a writ of prohibition will not lie in favor of the city to prevent the enforcement of such injunction pending the appeal.

ID.—ESTOPPEL BY STIPULATION.—Where counsel for both parties stipulated for continuance of the preliminary injunction pending the appeal upon conditions fixed by the court, which appellants complied with, they were estopped by such stipulation from asserting that there was no preliminary injunction.

ID.—JURISDICTION OF SUPERIOR COURT.—The superior court had equitable jurisdiction in an action for a perpetual injunction at the time of granting judgment for defendant, either to continue in force a preliminary injunction pending an appeal by plaintiffs or to make an original injunction order at such time restraining the successful party pending such appeal from interfering with appellants' property.

ID.—POWER TO AMEND INJUNCTION ORDER.—As the court intended to enjoin the city from interfering with plaintiffs' poles or wires pending the final determination of the appeal, upon its discovery that it was misled by the stipulation of the parties into the belief that it had issued, it had power to amend its injunction order so as to make the same order effective as an original injunction order running concurrently with the judgment, as intended to maintain appellants' rights pending the appeal.

ID.—INHERENT CHANCERY POWERS OF SUPERIOR COURTS.—The superior courts, as the successors to the constitutional grant of equity power to the former district courts, are vested with the same chancery jurisdiction which was vested in the high courts of chancery in England.

ID.—POWER OF CHANCERY TO KEEP LITIGATION IN STATU QUO.—The courts of chancery have inherent power to preserve the litigation in *statu quo.* The courts of chancery jurisdiction in other states recognize the same inherent power to be possessed by them.

ID.—CODE PROVISIONS REGULATING INJUNCTIONS—GRANT BY CONSTITUTION OF EQUITY POWER NOT CURTAILED—GENERAL PROVISIONS.—The code provisions regulating injunctions do not curtail the general grant of equity power vested in the superior courts by the constitution nor affect their general chancery power to preserve the fruits of a possibly successful litigation to appellants from an adverse judgment against them. The general code provision in section 3368 of the Civil Code, that preventive relief is given by "prohibiting a party from doing that which ought not to be done," is broad enough to cover the relief here granted and conforms with the general grant of equity jurisdiction in the constitution.

ID.—STRONG EQUITY FOR PROTECTION OF APPELLANTS' LONG-CONTINUED ENJOYMENT OF RIGHTS.—Where the matter in issue was the right of plaintiffs to maintain their poles and wires and their general telephone systems in the streets of a city in which by its permission they had maintained the same for more than twenty years, and the

city had threatened their destruction, and a temporary injunction had been granted against it, the plaintiffs appealing from a judgment for the city have a strong equity for protection of their poles, wires, and systems from destruction by the city pending their appeal, resting upon common fairness and a sense of justice, and to deny such right and allow their destruction to take place pending the appeal would be a travesty on justice.

APPLICATION for Writ of Prohibition to the Superior Court of Los Angeles County. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

J. P. Wood, City Attorney, and Wm. J. Carr for Petitioner.

Pillsbury, Madison & Sutro, for Respondents.

LORIGAN, J.—This is an application for a writ of prohibition.

On March 25, 1908, the Sunset Telephone and Telegraph Company, in conjunction with the Pacific Telephone and Telegraph Company, brought an action in the superior court of Los Angeles County against the city of Pasadena, and certain of its officers, to enjoin and restrain said city from enforcing one of its municipal ordinances relative to the use of streets thereof by telegraph and telephone companies requiring franchises and fixing charges to be paid for such use, and forbidding the maintenance of certain telegraph and telephone lines, and declaring them nuisances, and to restrain and enjoin the city from destroying or removing (as it was alleged the city threatened and intended to do under said ordinance) the poles, wires, and appliances of the plaintiffs erected and used in the streets, alleys, and public places of said city.

A temporary restraining order was issued on the filing of the complaint and thereafter, on November 12, 1908, upon a hearing it was ordered that an injunction *pendente lite* issue. A trial of the cause being had, the court, on May 27, 1909, entered an order directing a judgment for the city for costs and "that the temporary injunction theretofore issued be forthwith dissolved," and immediately thereafter the city, through its officers, without notice to plaintiffs, commenced the destruction of the companies' telephone system in Pasadena, by cutting twelve of their cables, a total of thirteen hundred and fifty

pair of wires, disconnecting twenty-four hundred subscribers and three exchanges, besides four toll lines. The next day a conference was had between the attorneys for the respective parties, and a stipulation entered into, wherein it was agreed that the lines of the companies might be reconnected pending an effort to come to some understanding whereby conditions might remain in *statu quo* pending the final determination of the action, the plaintiffs contemplating an appeal from the judgment.

In this connection it may be said that, while an order that an injunction *pendente lite* issue was made November 12, 1908, no injunction was in fact issued.

It was assumed, however, by the attorneys in the stipulation referred to, that such an injunction had in fact been issued, and it was provided thereby that if the parties could agree as to the conditions under which the subject-matter might be maintained in *statu quo* pending the contemplated appeal, that "an injunction as heretofore issued shall issue and continue in force pending the final determination of the action," and if unable to agree, the plaintiffs might apply to the court for the issuance of an injunction pending such final determination.

An agreement could not be reached and plaintiff moved the court to restore and continue in force such preliminary injunction pending the final determination of the cause which, on June 28, 1909, the court granted, being of opinion, as declared in its order, that the *status quo* between the parties should be maintained pending the final determination of the action. This order was made by the court on certain conditions,—namely, that plaintiffs should within ten days perfect their appeal to the supreme court from the judgment in the action; that within that time they deposit with the clerk of the court for the benefit of the city $3578.12, being two per cent of the gross receipts of the companies from their telephone business at Pasadena between August 7, 1907 (that being the alleged date of the expiration of one of the franchises granted by the city to the Sunset company) and the twenty-ninth day of May, 1909; that each six months thereafter and pending final determination of the cause, they should make a similar deposit; that the plaintiffs deposit with the clerk an agreement duly executed by them, whereby they should agree that in the event of a final determination of the action in favor of the city, if the

plaintiffs or either of them, or their successors, should apply to the city and secure a franchise for doing a telephone business in said city, under which the grantee of said franchise should be required to pay more than two per cent of the annual gross receipts from such business in said city, they would pay to the city the difference between the percentage of gross receipts required by said franchise, and two per cent of said gross receipts, accruing between the seventh day of August, 1907, and the date of granting such franchise, and that the plaintiffs within ten days give a bond, to be approved by the court, in the sum of fifteen thousand dollars for the faithful performance of all the terms and conditions imposed. All the conditions imposed were complied with by the plaintiffs. The order above referred to, restoring and enforcing the injunction pending the determination of the controversy, recited that it was made concurrently with the signing of the judgment ordered in the action, and at the same time it was made the court made and filed its findings of fact and conclusions of law in favor of the city, and signed a decree in its behalf which was entered June 30, 1909. There was nothing in the decree itself restoring or continuing the injunction in force, or referring to it at all.

On July 7, 1909, the defendant city moved the court to vacate said order of June 28, 1909, on several grounds, to wit, that no preliminary injunction had in fact ever been issued or been in effect in said action and, further, that the court was without power or authority to make said order continuing in force the injunction until the final determination of the action. This motion was denied, but it being brought to the attention of the court for the first time on the hearing thereof (the judge trying the case not being the one who had ordered the issuance of the injunction *pendente lite*), that notwithstanding the stipulation of the parties recited that such an injunction had theretofore issued in the action it had not in fact issued, the court made forthwith a further order. In this order the court recited the erroneous assumption, in making the order of June 28, 1909; that it was the intention of the court by said order to preserve intact the subject-matter of the action, free from molestation or injury by defendant city until the final determination of the action, and thereby corrected and amended the order of June 28, 1909, by enjoining the defendant city, in ex-

CLVII Cal.—50

press terms, from interfering in any manner with any of the poles, wires, appliances, or apparatus of plaintiffs pending the final determination of the action. The plaintiffs on July 7, 1909, after the foregoing proceedings, perfected their appeal to this court from the judgment, and have since been prosecuting such appeal in apparent good faith and with due diligence. Thereafter the present petition for a writ of prohibition was applied for and is now before the court for disposition upon the petition and the demurrer and answer of the respondent judge of the superior court, and similar pleadings on the part of the plaintiffs.

The main question in this controversy is, whether a superior court in an action brought to obtain a perpetual injunction can by an order made concurrently with the granting of a final judgment in the action denying the injunction, continue in force a preliminary injunction, or make an original injunctive order, restraining the successful party, pending an appeal by his adversary against whom the judgment denying a right to any injunction whatever runs.

While the petitioner here makes the point that the court had no power to make the order of June 28th continuing the injunction pending the appeal because there had, in fact, never been any preliminary injunction issued in the first instance upon which the order could operate, and likewise had no authority to make the order of July 7th amending the order of the former date, we attach no importance to these claims. If the superior court had the right to make any order concurrently with the final judgment continuing a preliminary injunction in force pending an appeal from the judgment, as counsel on both sides in their stipulation presented to the court conceded that an injunction *pendente lite* had issued, and was in force at the time the application to continue it was presented, and as the order of June 28th was made on that basis, neither party should be permitted to question it, or to question the validity of the order of July 7th made when it was first disclosed to the court that, in fact, while ordered, no preliminary injunction had issued, and which later order amended the order of June 28th so as in terms to enjoin the plaintiff in the action pending the appeal. If the court had authority to make an order concurrently with the judgment in the case, continuing in force or granting an injunction pending an appeal

it was the intention of the court by the order of June 28th to do so. Through the stipulation of counsel the court was inadvertently led to believe that an injunction had theretofore in fact issued, and the intent of its order was to continue it in force. Counsel had in their stipulation declared that such a preliminary injunction had issued, and was in force, and that the defendants in the action might move the court to continue it in force pending the appeal. As the court intended to enjoin the defendant city pending the final determination of the matter, if it had authority to do so at all, it could have effected it by continuing in force any injunction theretofore issued, or by making an original order for an injunction on June 28th, and being misled in carrying out its intent and purpose by assuming that the stipulation correctly stated that the preliminary injunction was then in force, it had a right when it discovered the error to amend its order and make an effective injunctive order as originally intended.

This point disposed of brings us back to the main question.

The position of the petitioner is, that under the law of this state a superior court is without jurisdiction to issue or continue in force an injunction pending an appeal, whether the order doing so is made prior to, or concurrently with the judgment, or is embraced therein.

The logical consideration of this question requires inquiry as to whether, in this state, a superior court in an action brought to obtain an injunction, may in its judgment denying the right to such injunction provide nevertheless for continuing in force pending a final determination of the action an injunction preliminarily issued; because, if it can, we think that while the order here in question enforcing or continuing the injunction cannot strictly be said to be part of the judgment, still it must be considered as intended to operate concurrently therewith, as the court declared, and if it could stand if embodied in the judgment, has equal force as an order made independent of but concurrent therewith.

We think, on an examination of the authorities, that it is hardly open to serious question but that the superior court has the power in its final judgment to continue in force a preliminary injunction so as to maintain the *status quo* of the subject-matter of litigation pending an appeal, notwithstanding that the right to a perpetual injunction, which was the

primary object of the action, may have been denied by the judgment itself.

By section 5 of article VI of the constitution of this state, the superior court is vested with "original jurisdiction in all cases in equity." A similar constitutional provision as to the jurisdiction of the district courts (predecessors to the present superior courts) is found in the old constitution of 1849 as amended in 1862 (art. VI, sec. 6), and as to such a provision it is said in *People* v. *Davidson*, 30 Cal. 379, 390, and likewise in *Rosenberg* v. *Frank*, 58 Cal. 387, 400, that "the equity jurisdiction with which the district courts are invested under the constitution is that administered in the high courts of chancery in England." To this same effect is *Bacon* v. *Bacon*, 150 Cal. 477, [89 Pac. 317].

It being determined, therefore, that the superior court has equity powers equal to those exercised by the chancery courts in England, it only remains to ascertain whether such courts possessed the power to maintain the *status quo* of the subject of litigation by continuing an injunction pending an appeal.

While this is the first time that this exact question has been presented to this court for determination, we have no doubt that the power existed in the chancery courts in England, and that under the authorities from our sister states it is a power with which courts of general equity jurisdiction in this country are invested, certainly at least in the absence of any limitation by constitutional provision or legislative enactment.

In some of the authorities, to be cited or quoted from, some discussion is had as to the power of the appellate court, on application therefor, to grant an injunction pending the appeal, as well as the right of the lower court under its original equitable power to do so. We are not now concerned with what may be the power of the appellate court in that respect, but are dealing solely with the right of the trial court in an equitable action to do so in its final decree, and limit ourselves to a consideration of this sole proposition.

As to the power of the English courts of chancery to preserve the subject-matter of litigation in *statu quo*, pending the final determination of a controversy, there can be no question. The existence of this power in such courts, and their right to exercise it in an equity suit, is thus generally de-

clared: "Where an action has been altogether dismissed by a divisional court, the court of appeals will in a proper case grant an injunction to restrain any of the parties from parting with the property till the hearing of the appeal. If an appeal is dismissed by the court, the jurisdiction of the court is gone, and no order can be made to bind the parties pending an appeal to the house of lords. Where a plaintiff whose appeal is about to be dismissed intends to appeal to the house of lords he should ask that the decree dismissing the bill should be so framed as to keep alive the jurisdiction of the court. But the court has power, on a proper case being made out, to restrain by injunction all dealings with a fund pending appeal to the house of lords, although the court has decided against the title of the plaintiff and dismissed the action. The jurisdiction, however, will be exercised with care and so as not to encourage any one to present appeals for the purpose of delay." (Kerr on Injunctions, 3d ed., pp. 29, 30.)

In *Hovey* v. *McDonald*, 109 U. S. 150-160, [3 Sup. Ct. 136], this power in the English courts of chancery is recognized, where the court says: "In England, until the year 1772, an appeal from a decree or order in chancery suspended all proceedings; but since that time a contrary rule has prevailed there. The subject was reviewed by the house of lords in 1807, and an order was made establishing the right of the chancellor to determine whether and how far an appeal should be suspensive of proceedings, subject to the order of the house on the same subject. (See Palmer's Pract. H. L. 9, 10; 15 Ves. 184; [*Hart* v. *Mayor of Albany*], 3 Paige, 383-385.)"

And in that case the court, referring to the slaughterhouse cases (10 Wall. 273), and still considering the power of the chancery courts of England to maintain by their order the *status quo* of the subject-matter of litigation pending appeal. says as to what was, and was not, decided by those cases: "It was decided that neither a decree for an injunction nor a decree dissolving an injunction was suspended in its effect by the writ of error, though all the requirements for a *supersedeas* were complied with. It was not decided that the court below had no power, if the purposes of justice required it, to order a continuance of the *status quo* until a decision should be made by the appellate court, or until that court should order the contrary. This power undoubtedly exists, and should

always be exercised, when any irremediable injury may result from the effect of the decree as rendered; but it is a discretionary power, and its exercise or non-exercise is not an appealable matter."

In *Polini* v. *Gray*, L. R. 12 Chan. Div. 438, it is said by the master of the rolls: "It appears to me on principle that the court ought to possess that jurisdiction, because the principle which underlies all orders for the preservation of property pending litigation is this, that the successful party is to reap the fruit of that litigation and not obtain merely a barren success. That principle, as it appears to me, applies as much to the court of the first instance before the first trial, and to the court of appeals before the second trial, as to the court of last instance before the hearing of the final appeal."

To the same effect are *Huguenin* v. *Baseley*, 15 Ves. Jr. 179; *Galloway* v. *Mayor etc.*, 3 De G. J. & S. 59; 2 Daniels Ch. Prac., 6th Am. ed., p. 1451.

In our sister states, where the question has arisen as to the power of courts of general equity jurisdiction to make orders maintaining the *status quo* of the subject-matter till final determination on appeal, the existence of such power has been confirmed by the appellate tribunals. (*Hart* v. *Mayor etc. of Albany*, 3 Paige Ch. 381; *Messonnier* v. *Kauman*, 3 John Ch. 65; *Desbro* v. *Desbro*, 37 How. Pr. 147; *Jewett* v. *Dringer*, 29 N. J. Eq. 199; *State ex rel.* v. *Dearing*, 180 Mo. 53, [79 S. W. 454].)

We refer particularly to the first and last cases cited, as the other cases mentioned equally sustain the existence of the power in a court of general equity jurisdiction to continue in force such injunction until the final determination of the action.

In *Hart* v. *Mayor etc. of Albany*, 3 Paige Ch. 381, plaintiff sued to enjoin the officers of the municipality from removing an ark or floating storehouse from the Albany basin where plaintiff had moored it, contrary to an ordinance of the municipality. On filing his complaint he obtained a preliminary injunction which, on motion after answer, the court dissolved. Plaintiff appealed, but notwithstanding this, defendants were proceeding to remove the ark. Application was made to the chancellor for an order restraining them from doing so pending the appeal, and the chancellor after

reviewing the practice in the English courts of chancery, decided that he had the power to make the order. He said: "Having arrived at the conclusion that the provisions of the revised statutes do not suspend the operation of the order appealed from, so as to restore the injunction and entitle the appellants to an order to stay the proceedings of the defendants as a matter of strict right, it becomes necessary to inquire whether this court has the power to suspend the operation of the order until the decision of the court for the correction of errors on the appeal; and if it has such power, whether this is a proper case for the exercise of the judicial discretion of the chancellor in this respect. . . . Such power, however, is frequently exercised by the superior courts over the suitors and parties therein, for the advancement of justice; and the granting a preliminary injunction in this court, before the rights of the parties are finally determined, always proceeds upon the same principle. The only reasonable ground of objection to such a proceeding, therefore, is, that it seems inconsistent for the court to make an order to restrain a party from proceeding, after it has, upon a full hearing of both parties, decided that he has both a legal and equitable right to proceed. But this objection would equally apply to all the orders in the English court of chancery to stay the proceedings on a decree, or order of the court by which the rights of the parties have been established by the same court. In the case of *Lewis* v. *Morgan,* 5 Price's Rep. 468, although it was admitted that applications of this kind were not to be encouraged, the court of exchequer in England suspended the proceedings under an order of that court, for a limited time, to enable the party against whom the order was made, to bring the case before the house of lords by appeal."

The order was granted on terms.

In the *State ex rel.* v. *Dearing,* 180 Mo. 53, [79 S. W. 454], the proceeding in the supreme court was in prohibition, as here, and involved the question as to the power of the St. Louis City circuit court to continue in force in its final judgment denying plaintiffs an injunction and pending the appeal therefrom, a temporary injunction previously issued. In sustaining the power of the trial court to make the order, the court said: "The precise question presented by that contention is: Has a circuit court in this state in a suit in equity, in

which a temporary injunction has been granted, in its final judgment in favor of the defendant on the merits, dissolving the injunction and dismissing the plaintiff's bill, the power to continue the temporary injunction in force pending the appeal taken from that judgment? By the constitution and laws of this state, circuit courts are invested with general original jurisdiction of suits in equity, subject to the right of appeal to the supreme court or the courts of appeals, as the case may be, and in such cases are invested with all the powers inherent in an English court of chancery, except so far as those powers may have been limited by statute. As incident to their jurisdiction, the English chancery courts have power in a proper case to grant an interlocutory injunction to restrain a mischief complained of, and preserve matters in *statu quo* until the final determination of the issues therein."

After referring to and quoting from several authorities sustaining the power in the English court of chancery, the court also cited and quoted from American authorities equally sustaining the same power in courts of original equitable jurisdiction in this country, and, as a conclusion from their consideration, said: "So in this country, the jurisdiction of courts of equity of the first instance to make all proper orders for the preservation of the subject-matter of the controversy in *statu quo* until the final determination thereof in the court of last resort has been uniformly maintained by the highest authority. . . . In the light of the authorities cited, to which many others might be added, we have no hesitation in holding, in conformity to the rulings of the highest authorities in England and America on the subject, that the St. Louis City circuit court, in the exercise of its jurisdiction as a court of equity, had full power, in its final judgment or decree in the case stated, to continue in force the interlocutory injunction granted at the beginning of the cause pending the appeal therefrom to the supreme court."

On this same subject it is said in 22 Cyc., p. 974: "But a preliminary injunction may be continued pending an appeal from a decree dismissing complainant's bill . . . in case such continuance is necessary to protect the complainant and to maintain the subject-matter in such condition that the complainant will not be deprived of relief in case of his success on the appeal but not otherwise."

Counsel for both parties refer in their briefs to *Eldridge* v. *Wright,* 15 Cal. 88, and *Hicks* v. *Michael,* 15 Cal. 107, but neither of these cases has any bearing upon the precise question under consideration. The question there involved was as to the power of the supreme court to grant an injunction pending appeal. The question here involves only the power of the superior court by its final judgment and in the exercise of its original equity jurisdiction to grant it—entirely different. questions involving the consideration of different principles of law, and, as heretofore stated, we limit our discussion to the latter question only.

While it is therefore quite clear from these authorities that. the power existed in the courts of chancery under the English system to maintain the *status quo* of the subject of the litigation pending appeal, and that courts of general equity jurisdiction in this country are held to have like power, and that. as to the superior courts of this state it has been directly decided that they possess the same equity jurisdiction as was possessed by the English chancery courts, it is nevertheless. contended by counsel for petitioner that such general equity jurisdiction is subject to legislative control as far as provisional remedies are concerned, as such remedies are mere incidents to the jurisdiction of the courts, and are no part of its essential jurisdiction.

On this assumption, and in connection with it, it is urged that under the code provisions of this state the superior courts, notwithstanding they are courts of general equity jurisdiction, are without power to issue injunctions, either permanent or provisional, except in such cases as are provided by the code, and which it is insisted do not embrace power to continue in force pending an appeal, a temporary injunction theretofore issued.

Conceding, without deciding, all that petitioner contends for, still, if the legislature has not by some provision curtailed the power which, as courts of general equity jurisdiction invested with all the power exercised by courts of chancery in England, our superior courts possess, this power remains and may be exercised. If it has been shorn of power in this respect by legislation, it must be found in the code provisions as to the matter of injunctions, and a careful examination of these provisions, both in the Civil Code and Code of Civil Pro--

cedure, discloses nothing whereby the exercise of power in question has been curtailed.

It is provided by section 3420 of the Civil Code that "preventive relief is granted by injunction, provisional or final." And "provisional injunctions are regulated by the Code of Civil Procedure." (Civ. Code, sec. 3421.)

Section 3422 following, provides for cases in which a final injunction may be granted, and section 525 of the Code of Civil Procedure provides the cases in which the court may grant, and in which it cannot grant injunctions. None of these provisions refer in any manner to the right of the court to grant a provisional injunction, in a final judgment, maintaining in force the *status quo* of the litigation pending an appeal. But from a consideration of these code provisions it is insisted by petitioner that they embody complete legislation on the subject of injunctions—final and provisional—and that the power of the court to grant injunctions in any other case, or under any other circumstances than those mentioned in the sections of the Code of Civil Procedure is denied. This contention of petitioner is based mainly on the terms of sections 3274 and 3421 of the Civil Code; the one declaring that preventive relief can only be granted in cases specified in "this part (part I) of the Civil Code;" the other declaring that "Provisional injunctions are regulated by the Code of Civil Procedure." But these sections, and the sections of the Code of Civil Procedure heretofore referred to, are not all the legislation on injunctions. Section 3366 of the Civil Code provides that specific or "preventive relief may be given as provided by the laws of this state" and section 3368 provides that "preventive relief is given by prohibiting a party from doing that which ought not to be done." Section 3274 is found in that part and title of the code dealing with "Relief in General." Sections 3366 and 3368 are found in the title dealing with "Specific and Preventive Relief" in particular, and must be taken as a particular specification of cases under section 3274 when the court is authorized to grant preventive relief in addition to other cases mentioned in the Civil Code provision.

While the codes declare the law of the state (Civ. Code, sec. 4; Code Civ. Proc., sec. 4), they do not declare all of it. The constitutional provisions also constitute the law of the state,

and when, as addressed to the particular matter in question, there is vested in the superior court as a court of general equity jurisdiction by the constitutional provision, the same jurisdiction which belonged to the court of chancery in England, and, as pertaining thereto, the right to restrain by injunction pending an appeal, if that power is curtailed by legislation it must be effected by legislation which unequivocally has that effect. Nowhere in the code is there found any legislation of that character. While there is legislation prohibiting the granting of injunctions in certain specified cases, and power given to grant them, both temporary and final, in other actions pending in the court, there is nothing in the legislation on the subject which in terms, or by necessary implication, has divested the superior court of power in the exercise of its otherwise equitable jurisdiction to grant an injunction to maintain the *status quo* of the subject-matter of litigation pending an appeal.

Not only do we think that there is nothing in the codes which attempts to curtail this power, but under section 3368 of the Civil Code which provides that "preventive relief is given by prohibiting a party from doing that which ought not to be done," the power of the court to make the order in question remains undisturbed.

The precise matter in issue in the action below was the right of the plaintiffs in the case to maintain their poles, wires, and general telephone systems in the streets of Pasadena, where, with the permission of the municipality, they have been maintained for upwards of twenty years. The city was threatening to cut down these poles and destroy the systems and suit was brought to enjoin them, and a preliminary injunction was issued. Judgment went against plaintiffs and from that judgment they had a right to appeal, and in good faith were prosecuting it, when the city actually commenced the destruction of the telephone systems. Common fairness and a sense of justice readily suggests that while plaintiffs were in good faith prosecuting their appeals, they should be in some manner protected in having the subject-matter of the litigation preserved intact until the appellate court could settle the controversy. If the city could be permitted while the appeals were pending, to destroy the property of the plaintiffs, a reversal of the judgment would be of little conse-

quence to the latter.  They would have suffered the loss of
their property, and consequent great and irreparable injury,
without any advantage to the municipality.  The suggestion
of this result to the plaintiffs further readily suggests that if
there is any power in the lower court to maintain the *status-
quo* of the subject-matter pending the appeal it should be
upheld.  A trial court may be reasonably certain that the
conclusion it has reached denying an injunction is correct,.
while at. the same time the matter may not be entirely free
from doubt in its mind.  Under these circumstances, and
where the losing party is endeavoring to avail himself of his-
right of appeal and is prosecuting that right diligently, the
trial court ought to have the power, and discretion to exercise
it, so as to protect the subject-matter of litigation from de-
struction pending the final determination of that right, and in
order that, if it be ultimately decided that the judgment
appealed from was erroneous, his property may be saved to
him.  To grant the right of appeal from a judgment denying
an injunction which is sought to restrain the destruction of
property, and at the same time deny the trial court the right.
to preserve the property intact pending the appeal, would be
a travesty on justice.

While it is true that we are here dealing with the matter of
mere abstract power in the superior court, it may be said that
while we are satisfied such power exists, its exercise is a matter
discretionary with the trial court and to be exercised only
under such conditions imposed upon the party in whose favor
the injunction order pending appeal is given, as will fully and
fairly protect the adverse party in the fruits or benefits of the
judgment in his favor.  It would appear that in granting the
injunction here in question the trial court endeavored to fully
protect the municipality by the conditions imposed on the
plaintiffs in granting the injunction and which they accepted.
But with that matter we have no present concern.  As we said,
the question on this application for a writ of prohibition is.
simply a question of the abstract power, or jurisdiction of the
court, to grant the injunction pending appeal which, as we
have held, the court clearly has.  Did we deem the possession
of this power in the court doubtful by virtue of the code pro-
visions to which petitioner refers, we would nevertheless be
constrained to hold that the power existed as necessary to the

·ends of justice, because a decree denying an injunction or dissolving a preliminary injunction is not suspended pending ·the appeal therefrom, and it is a debatable question whether ·there is any power in our appellate courts by original injunctive order to maintain the *status quo* of the litigated subject-matter pending appeal.   Hence, unless the superior court possesses the power by provisional injunction to maintain the *status quo* of the subject-matter of litigation, there is no remedy afforded plaintiffs whereby their property could be saved from destruction while the question of the right of the city to require its removal from its streets was, in good faith, being litigated.

The petition for a writ is denied.

Sloss, J., Angellòtti, J., Shaw, J., Henshaw, J., and Melvin, J., concurred.