[Civ. No. 40232. First Dist., Div. One. Nov. 2, 1978.]

JACKSON T. PALMER et al., Plaintiffs and Appellants, v.
CITY OF OAKLAND et al., Defendants and Respondents;
OAKLAND BLACK FIRE FIGHTERS ASSOCIATION et al.,
Interveners and Respondents.

[redacted]

## COUNSEL

Davis, Cowell & Bowe, Philip Paul Bowe and Duane W. Reno for Plaintiffs and Appellants.

David A. Self, City Attorney, and William C. Sharp, Deputy City Attorney, for Defendants and Respondents.

Bonjour, Gough, Stone & Remer, Patricia Ann McKinley and James Stanford White for Interveners and Respondents.

## OPINION

**ELKINGTON, J.**—The City of Oakland (City) had for some time been involved in extensive litigation concerning the rights of, and claimed discrimination against, minority persons, particularly blacks, in relation to job and promotional opportunities in the City's fire department. Minority persons comprised 51 percent of the City's population, while they held 11.2 percent of the fire department's uniformed jobs. In the promotional grades (above the entering rank of hoseman) they occupied 4.7 percent of the positions. And of the 77 lieutenants' classifications, they filled only one of them. International Association of Fire Fighters, Local 55 (Local 55), was the recognized representative of the City's firefighters, including their 11.2 percentage of minority persons. Oakland Black Fire Fighters Association (Black Fire Fighters Association) had a membership

of all or most of the City's black firefighters, who in turn comprised more than 75 percent of the fire department's minority persons. The Black Fire Fighters Association contended that Local 55 generally furthered the interests of its white, to the prejudice of its minority person, members.

The City's civil service board had announced and scheduled a promotional examination for the positions of fire department lieutenant, to be held April 29, 1975.

After notification of the examination date to the City's firefighters, Local 55 requested that the date be changed to April 8, 1975. The reason, as stated by the union, was that: "The members of the Fire Department benefit by having promotional examinations held on the earliest possible dates in that their retirement and seniority benefits are affected by the length of time that they hold a certain rank. In addition each promotional rank has its own time-in-grade requirement, so the sooner a member is appointed to one rank, the sooner he can advance to the next."

But advancing the examination date as proposed would have disqualified 12 of the City's and Local 55's firefighters including one or more minority persons whose necessary time-in-grade requirements would not be fulfilled until sometime during the period April 8-29, 1975. The 12 protested so, as stated in the City's brief, "the Board decided to mitigate the hardship by admitting to the examination those persons whose eligibility in terms of service accrued prior to April 29." Three of the 12, including one or more minority persons, passed the examination and were placed on the civil service eligibility list for appointment to the grade of lieutenant.

Local 55 and one Jackson T. Palmer, a white firefighter, thereupon sought the extraordinary writ of mandate in the superior court, contending that the civil service board's grant of eligibility to the 12 to take the examination was arbitrary, capricious and ultra vires. They prayed that the City "remove from the list of persons certified as eligible for promotion to the rank of Lieutenant in the Oakland Fire Department all persons who were ineligible to take the April 8, 1975, Lieutenants' examination."

The Black Fire Fighters Association was permitted to intervene in Local 55's and Palmer's mandate proceeding. It contended then, as it does now, that "Local 55 has not in the past and does not at this time

fairly represent the interests of minority members of the Oakland Fire Department and has at all times in the past and in the current action does, in fact, represent positions antagonistic and adverse to all minority members of the Oakland Fire Department, including members of the [Oakland Black Fire Fighters Association]."

It is of significance, as will soon appear, that there had been pending a closely related companion case entitled Glen Hull v. Douglas Cason et al., Alameda Superior Court No. 451337-9, in which minority person firefighters of the City and the Black Fire Fighters Association sought relief on account of racially discriminatory employment practices in the Oakland Fire Department. Among the defendants of that action were "*Stephan Menietti*, [italics added] in his capacity as Fire Chief of the City of Oakland, and his Agents, Subordinates and Employees" and, among the interveners, *Jackson T. Palmer* (the latter also being one of the petitioners of the instant mandate proceeding). The Hull v. Cason action was thereafter consolidated for trial, and tried, with the instant mandate proceeding of Palmer and Local 55.

The superior court entered judgment denying the petition of Palmer and Local 55 for mandate, and those parties have appealed. It is that appeal which is presently before us.

Among other things, the superior court had found, and concluded as a matter of law, that the parties of Hull v. Cason, including Palmer, had entered into a stipulation waiving objection to the promotion of the 12 firefighters whose time-in-grade was fulfilled during the period April 8-29, 1975, and accepting the existing promotional lists which included those 12.

The court then further found: "International Association of Fire Fighters, Local 55, plaintiff . . . in this action, at all times relevant hereto, has had and currently has an identity of interest with Steven Menietti, Chief of the Oakland Fire Department, and [a defendant] in Hull v. Cason, in the issues of fact, law, judgment and writ of mandate. . . . Local 55 had knowledge of all proceedings in Hull v. Cason. . . . Local 55 paid for the [legal] representation of Chief Menietti in those proceedings, and the interests which it now represents were represented in the proceedings in Hull v. Cason. . . . Those parties [i.e., among others, Palmer, Menietti, and *Local 55*] are now collaterally estopped to seek to alter the composition of such promotional lists."

■ Local 55, although recognizing that Palmer, its copetitioner in the instant mandate proceeding, was a party to the Hull v. Cason action and therefore bound by the stipulation, takes the position that *it was not such a party in the other action,* and accordingly was, and is, not so bound.

The contention is without merit.

The trial record abundantly establishes that Local 55, although not named as a party in Hull v. Cason, nevertheless paid the costs of litigation and attorney fees of fire chief Menietti, and effectively represented therein the interests of those of the union's white firefighter members who opposed the claims of the minority person firefighters and the Black Fire Fighters Association. Indeed, Local 55's president expressly testified at the trial that his union "is paying for some of the attorneys in this case," including the attorneys who there represented fire chief Menietti, and here on appeal represent Local 55.

The superior court, on the evidence, reasonably concluded that Local 55 was in "privity" with Menietti and Palmer, in their opposition to the claims of the minority person firefighters and Black Fire Fighters Association in Hull v. Cason. In respect of this principle it has recently been said: "[T]he word 'privy' has acquired an expanded meaning. The courts, in the interest of justice and to prevent expensive litigation, are striving to give effect to judgments by extending 'privies' beyond the classical description. (*People* v. *One 1964 Chevrolet Corvette Convertible,* 274 Cal.App.2d 720, 731 . . . .) *The emphasis is not on a concept of identity of parties, but on the practical situation. The question is whether the non-party is sufficiently close to the original case to afford application of the principle of preclusion.* (*People* v. *One 1964 Chevrolet Corvette Convertible, supra,* at pp. 731-732; Vestal, *Preclusion/Res Judicata Variables: Parties,* 50 Iowa L.Rev. 27, 45.) To quote Professor Vestal (at p. 45): 'The courts and commentators have indicated a dissatisfaction with the analysis in terms of privity and mutuality and have expanded the impact of preclusion far beyond the traditional concepts. Clearly, the field is developing; it is obvious that the last word has not been spoken on the matter.' [¶] It will be observed that the term 'collateral preclusion' appears in modern legal literature and, in fact, this term was thought of by the reporters of the Restatement of Judgments as being appropriate because it is less personal than that of 'collateral estoppel,' but the latter expression was kept because of usage." (*People* ex rel. *State of Cal.* v. *Drinkhouse,* 4 Cal.App.3d 931, 937 [84 Cal.Rptr. 733]; italics added.)

The principle is reasonably, and equitably, apposite to a factual context such as that before us where parties in privity with a nonparty had in an earlier action entered into a formal, binding, courtroom stipulation.

■ "A stipulation 'is conclusive upon the parties' " (*Spindell* v. *State Bar*, 13 Cal.3d 253, 260 [118 Cal.Rptr. 480, 530 P.2d 168, 80 A.L.R.3d 1231]), and having stipulated, a party is estopped from taking a contrary position in the same, or related litigation (*City of Pasadena* v. *Superior Court*, 157 Cal. 781 [109 P. 620]; *County of Los Angeles* v. *Bartlett*, 203 Cal.App.2d 523, 525 [21 Cal.Rptr. 776]; *Hall* v. *San Jose Abstract & Title Ins. Co.*, 172 Cal.App.2d 421, 428 [342 P.2d 362]).

■ We observe further that the granting or withholding of relief through mandamus is largely controlled by equitable considerations. (*San Diego County Dept. of Pub. Welfare* v. *Superior Court*, 7 Cal.3d 1, 9 [101 Cal.Rptr. 541, 496 P.2d 453].)

It is concluded that the superior court's determination was adequately supported by substantial evidence, its findings of fact, and by well-known principles of fairness and equity. No error is seen.

We need not consider other points and contentions raised in the parties' briefs in our disposition of the appeal.

The judgment denying the writ of mandate is affirmed.

Racanelli, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied November 20, 1978, and the opinion was modified to read as printed above.