633 F.2d 817
 24 Fair Empl.Prac.Cas. 1340,
24 Empl. Prac. Dec. P 31,400
Samuel GOLDEN, Milo Gaskin, Manuel Navarro, Ernest Robinson
and the Oakland Black Firefighters Association,
individually and on behalf of all others
similarly situated,
Plaintiffs-Appellants,
v.
LOCAL 55 OF THE INTERNATIONAL ASSOCIATION OF FIREFIGHTERS,
its membership, and George Rosco, Richard Cecil, Jack Doan
and Tom Kenton, as individuals and as officers of Local 55
of the International Association of Firefighters, Hanley
Ornsby, as an individual and as a former officer of Local
55, and the International Association of Firefighters,
Defendants-Appellees.
 No. 78-3267.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 9, 1980.
Decided Dec. 2, 1980.
 
 Edward H. Lyman, Berkeley, Cal., and Ruby Udell, Stanford, Cal., Ballachey, Meade, Duane & Lyman, Berkeley, Cal., for plaintiffs-appellants.
 Duane W. Reno, Davis, Cowell & Bowe, San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before ELY and GOODWIN, Circuit Judges, and GRANT,* District Judge.
 GOODWIN, Circuit Judge.
 
 
 1
 Plaintiffs, who represent current minority male members of the Oakland Fire Department, appeal a judgment entered after a nonjury trial in favor of their union, Local 55 of the International Association of Firefighters, and named union officials (hereinafter "the union"). The union's challenged conduct is alleged to be in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., 42 U.S.C. § 1981, and of the union's duty of fair representation under various state and federal statutes. Because the factual findings by the district court are not clearly erroneous, we affirm.
 
 
 2
 The dispute centers on the legality and significance of several actions and omissions of the union. The same facts underlie the firefighters' Title VII, § 1981, and "unfair representation" claims.
 
 
 3
 By way of background, the union represents members of the Oakland Fire Department for collective bargaining purposes. In 1973, two of the plaintiffs in this case founded the Oakland Black Firefighters Association because they felt the union was not taking a "positive position" on affirmative action.
 
 
 4
 In late 1973, Glen Hull, a black probationary firefighter, was discharged. Hull and the Black Firefighters Association brought suit in 1974, arguing that Hull had been fired because of racial discrimination (Hull v. Cason ).[1] The union voted to hire an attorney to represent the defendant Fire Chief. It spent $30,000 on the defense costs; the money was collected from union dues. The state trial court found that Hull had not been fired for discriminatory reasons, but did find that a number of the fire department's employment practices discriminated against minorities. Hull did not appeal the part of the decision that related to him. The state appellate court reversed the remedial measures ordered by the trial court.
 
 
 5
 In February or March of 1975, the Oakland Civil Service Board recommended a change in the weights assigned to the various portions of the promotion examination. The Civil Service Board recommended reducing the weights of the written and seniority portions of the examination so as to help achieve the goals of affirmative action. The union protested the change; the City Manager decided not to adopt the recommendations of the Civil Service Board.
 
 
 6
 Also in February of 1975, an arbitration award between the union and the City of Oakland required a certain minimum staffing of fire engines. The union did not go to court to enforce the award to hire more firefighters, arguably because its officers and counsel thought the Hull appeal (which concerned the list of eligible candidates) had stayed the arbitrator's award.
 
 
 7
 The Oakland Civil Service Board proceeded to schedule promotional examinations for April 29, 1975. The president of the union, one of the defendants here, protested the April 29, 1975, date; thereafter the examination was advanced three weeks to April 8, 1975. As a result of advancing the date, twelve firemen who would have been eligible on April 29 were not yet eligible to take the April 8 examination. However, the Civil Service Board decided to allow those twelve to take the examination and waived any time in grade deficits. Three firemen, including plaintiff Navarro, passed and were placed on the civil service promotion eligibility list.
 
 
 8
 In January of 1976, plaintiff Navarro reached the number one spot on the promotion list. The union and one of its officers petitioned for a writ of mandamus to set aside the new promotion list, arguing that Navarro and the two others had been illegally placed on the eligibility list. This case became known as Palmer v. City of Oakland, 86 Cal.App.3d 39, 150 Cal.Rptr. 41 (1978). The state court found that the Palmer plaintiffs had been in privity with the Hull defendants and that they were bound by the Hull defendants' stipulation that Navarro correctly had been placed on the eligibility list.
 
 
 9
 The district court made several rulings which plaintiffs contest. First, the court limited the class to current members of the Oakland Fire Department. The court next found that it had no jurisdiction because plaintiffs had not exhausted their internal union remedies. Third, the court found that the union had not breached its duty of fair representation. Fourth, the court found that the union had not violated Title VII. Accordingly, the union had judgment in its favor on all counts.
 
 
 10
 The standard for reviewing rulings three and four is whether the findings are consistent with Fed.R.Civ.P. 52(a). As discussed below, because we find that the district court's findings three and four were not clearly erroneous, the other rulings, if in error, are harmless.
 
 The Title VII Complaint
 
 11
 The plaintiffs' first amended complaint, second claim for relief, alleges that the union violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. by:
 
 
 12
 1. Hiring an attorney to defend Oakland's discriminatory practices in the Hull case;
 
 
 13
 2. Failing to fairly represent, adjust grievances, or process administrative complaints of minority members;
 
 
 14
 3. Preventing the hiring and promotion of minority firefighters by failing to enforce the arbitration award; and
 
 
 15
 4. Acquiescing in racially discriminating practices of recruitment, hiring, testing and promotion.
 
 
 16
 There are three theories under which one can bring a Title VII claim: disparate treatment, disparate impact, and present effects of past discrimination. Although plaintiffs' brief does not clearly articulate their theory, they seem to be relying on a disparate impact theory. We have determined, however, that the plaintiffs' complaint raises both disparate impact and disparate treatment claims.
 
 
 17
 The methods of proving these Title VII theories differ. The disparate impact theory does not require proof of discriminatory intent. Instead, it focuses on the consequences of the employment practice. Griggs v. Duke Power Co., 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971), B. Schlei & P. Grossman, Employment Discrimination Law, at 1158 (1976). Plaintiffs' claim that the union encouraged racially discriminating practices in promotion examinations is a disparate-impact claim. Thus, if they had been able to show that the test had a disparate effect on minorities, they did not need to prove discriminatory intent.
 
 
 18
 In contrast, the disparate treatment theory of Title VII requires proof of intent. The "ultimate focus of the inquiry, and thus the proof, is whether or not the decision or action in question was 'racially premised.' In other words, motivation and intent are the ultimate issue-whether 'the presumptively valid reasons for (the) rejection were in fact a coverup for a racially discriminatory decision'...." B. Schlei & P. Grossman, Employment Discrimination Law, at 1153-54 (1976), citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 805, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973); see Teamsters v. United States, 431 U.S. 324, 335 n.15, 97 S.Ct. 1843, 1854 n.15, 52 L.Ed.2d 396 (1976).
 
 
 19
 The other acts which the plaintiffs cite as exemplary of the Title VII and unfair representation claims fall within the disparate treatment category. Thus, in reviewing whether there was substantial evidence to support the court's finding of no Title VII violation, we look at different threshold facts. We find substantial evidence to support the conclusion of "no Title VII violation" under both theories.
 
 
 20
 Hiring the Defense Attorney in Hull.
 
 
 21
 Plaintiffs argue that the union's payment of defense costs in Hull, out of dues and assessments collected in part from the Hull plaintiffs, was discriminatory. Plaintiffs argue that "to fairly represent all its members, (the union) should not have retained counsel for Chief Menietti in Hull or paid for legal counsel in Palmer without providing similar sums to the plaintiffs in Hull and to Navarro in Palmer."
 
 
 22
 This conclusion is not evidence. A union may take action for union purposes even though the effect is to favor one group against another. See Humphrey v. Moore, 375 U.S. 335, 349, 84 S.Ct. 363, 371, 11 L.Ed.2d 370 (1964). In this case, there was substantial evidence from which the district court could conclude that the union's reasons for contributing to the defense and for siding with the chief against the Hull plaintiffs were valid and not a coverup for a racially discriminatory decision. (Defendant Doan testified that the union believed Hull's charges were unfounded and threatened the integrity of the fire department's training program. He said that the competency of each firefighter is of concern to the union because all are dependent on each other in hazardous situations. Defendant Rosco testified that the union membership voted to provide the legal defense in Hull only after Rosco assured it that other minorities in Hull's training class had received permanent employment.) No testimony was offered to the effect that the defense was provided because the union did not want to encourage the advancement of blacks in the department. Moreover, the state trial court found that Hull had not in fact been fired for discriminatory reasons. Plaintiffs have pointed to no evidence, other than the fact that the defense money was provided, that suggests that the union's action was taken with discriminatory intent.
 
 
 23
 The Failure to Fairly Represent, Adjust Grievances or Process Administrative Complaints of Minority Members.
 
 
 24
 As discussed above, the union was not required to provide legal counsel for plaintiffs just because it provided counsel for other union members so long as the choice was not made for racial reasons. Thus, the union's "failure to fairly represent ... minority members" is not established by showing that it helped pay for the Hull defense.
 
 
 25
 There is also substantial evidence from which the trial court could have concluded that plaintiffs did not satisfy their burden of showing disparate treatment in adjusting grievances or processing complaints of minority members. Plaintiffs filed an "administrative complaint" with the union in September, 1975, protesting the union's retention of a lawyer in Hull. Defendant Rosco testified that, according to union procedure, he forwarded the complaint to the International Association of Firefighters. The International sent a letter to plaintiffs' attorney informing plaintiffs that the complaint was not in the proper form. The complaint was not resubmitted.
 
 
 26
 Plaintiff Navarro filed a complaint with the union regarding the advanced examination dates and the filing of Palmer v. City of Oakland, supra. A union committee investigated Navarro's complaint, but did not meet with Navarro. It issued a decision finding no violations of the union's constitution or bylaws.
 
 
 27
 Although defendant Rosco refused plaintiff Robinson's request to have the executive boards of the union and the Black Firefighters Association meet, he did offer to meet personally with the Black Firefighters. At plaintiffs' request, defendant Doan called a meeting of the Advisory Committee (whose function it is to resolve complaints). As a result of this meeting, the union took various steps to expand the affirmative action program. Plaintiffs have not shown evidence of other complaints which were not processed.
 
 
 28
 We conclude that there was substantial evidence supporting a finding of no disparate treatment or discriminatory intent in processing complaints and adjusting grievances of minority members.
 
 
 29
 The Failure to Enforce the Arbitration Award.
 
 
 30
 Plaintiffs correctly point out that the 1975 arbitration award required the city to hire additional firefighters. The union did not sue to enforce the award. Plaintiffs argue that in the past, when the hiring list did not include many minorities, the union sued to enforce hiring requirements. Plaintiffs argue that the reason why the union did not sue to enforce the arbitration award is because the hiring list was amended to include many more minorities.
 
 
 31
 The trial court found that plaintiffs, the class of present minority employees, had suffered no injury themselves by the failure to enforce the arbitration award and thus lacked standing. This conclusion is correct with regard to the existing class of present members.[2] They did not have a "personal stake" in the outcome of the arbitration award sufficient to warrant jurisdiction. See Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975).
 
 
 32
 The Hiring, Promotion, Recruiting.
 
 
 33
 Plaintiffs' allegation that the union encouraged discriminatory practices in recruitment, hiring and promotion of minorities involves both disparate treatment and disparate impact types of Title VII claims. The district court had substantial evidence to find against both types of claims.
 
 
 34
 Plaintiffs argue that discriminatory hiring was shown by the union's failure to enforce the arbitration award. Defendant Rosco testified, however, that the union decided not to pursue enforcement of the award on advice of counsel that the order was stayed pending the Hull appeal (Hull had amended the lists of eligible persons). Rosco also testified that the union instituted measures to improve the affirmative action recruitment program. Plaintiffs, therefore, did not introduce substantial evidence of a discriminatory intent or practice in recruitment or hiring.
 
 
 35
 Plaintiffs' claim regarding discrimination in promotion focuses on two events. First, plaintiffs object to the union's retention of counsel in Palmer v. City of Oakland, supra. Whether this point is treated as a disparate treatment or impact claim, the court had sufficient evidence to reject it.
 
 
 36
 Twelve people were disqualified by the change in the examination date-only one, Navarro, was shown to be a member of a minority. No showing of disparate impact was made. There is also testimony to support the court's conclusion that the lawsuit was not filed out of a discriminatory motive. Defendant Rosco testified that in the past other persons were precluded from taking the promotion exam even though they missed the time-in-grade requirement by only a few days. Thus, the union felt that the waiver of the time-in-grade requirement resulted in persons being treated unequally.
 
 
 37
 The second event which plaintiffs say demonstrates the union's discrimination in promotion is the union's recommendation that the weights of the various parts of the promotion examination not be changed. The district court found that maintenance of the 60% written-10% seniority-30% oral promotion examination did not have a discriminatory impact on minorities. It also found that the union's intent in encouraging maintenance of those weights was not discriminatory, but in pursuit of a legitimate union interest. Because this is a disparate impact claim, plaintiffs need only have shown the former to establish a prima facie Title VII claim.
 
 
 38
 We find substantial evidence, however, to support the conclusion that no disparate impact was shown. Plaintiffs did not show that the 1975 examination had a disparate impact on minorities. Although the Oakland Civil Service Board had recommended decreasing the weights of the written and seniority portions of the test, it did so only on the basis of a "general expectation" that this would promote affirmative action. It had no evidence of the disparate impact on minorities of the various testing methods. Indeed, in 1970, the examination had been modified so as to place less weight on the oral portion because that was then thought the most discriminatory. Thus, the district court's finding for the union on the Title VII claim was not "clearly erroneous."
 
 
 39
 The § 1981 Claim.
 
 
 40
 Title 42 U.S.C. § 1981 provides a federal remedy for discrimination in private employment on the basis of race. Johnson v. Railway Express Agency, 421 U.S. 454, 459-60, 95 S.Ct. 1716, 1719-20, 44 L.Ed.2d 295 (1975). Proof of discrimination in § 1981 cases requires a showing of intent. Craig v. County of Los Angeles, 626 F.2d 659 (9th Cir. 1980). See also Long v. Ford Motor Company, 496 F.2d 500, 505 (6th Cir. 1974) (McDonnell proof considerations apply to § 1981).
 
 
 41
 Plaintiffs have not alleged any additional facts to support their § 1981 claim. Thus, for the reasons discussed above, we find substantial evidence to support the finding of no § 1981 violation.
 
 
 42
 The Various State Claims.
 
 
 43
 Plaintiffs complaint also alleged that the union violated the California Fair Employment Practice Act, Cal.Labor Code § 1410, et seq., and the Meyers-Milias-Brown Act, Cal.Govt. Code §§ 3500-3510, by breaching its duty of fair representation and exceeding its lawful scope of representation. In addition, they make a breach of contract claim, arguing that the union did not fairly represent all members or fairly process grievances as required by the union's constitution and bylaws.
 
 
 44
 The fair representation doctrine[3] is that one who is a statutorily authorized exclusive bargaining agent has a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary contracts. Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). Plaintiffs allege no new facts to support these claims. For the reasons discussed in the earlier sections, we affirm the district court's conclusion that the union did not breach its duty of fair representation.
 
 
 45
 The Exhaustion Ruling.
 
 
 46
 In its conclusions of law, the district court said that it did not have jurisdiction over plaintiffs' claims because they did not exhaust their contractual remedies. We need not and do not reach the question whether this conclusion was correct. Even if the ruling were incorrect, it was harmless error because the district judge, after a full trial, found that plaintiffs had not carried their burden of showing discrimination.
 
 
 47
 The Class Expansion Issue.
 
 
 48
 The trial court granted plaintiffs' motion to proceed as a class, but limited the class to present minority male members of the fire department. Plaintiffs had requested that the class include all past employees and applicants and all "male minorities who may in the future apply for employment with the Oakland Fire Department and who have been, are now, or may in the future be members of Defendant (the union)...."
 
 
 49
 All but one claim applicable to future employees and applicants were disposed of by the findings of the district court. The court did not reach the tendered issue whether the union's failure to enforce the arbitration award requiring more hiring was discriminatory; instead, the court found that the present members of the fire department had no standing. For the reasons discussed below, we see no need to remand to the district court for a determination whether the refusal to enforce the arbitration award was discriminatory. First, if it was error to exclude from the class future members of the Oakland Fire Department, it was harmless error. The reason is that one would not become a member of the class, able to enforce injunctive relief, until he was hired. Once a person is hired, he does not have standing to enforce the arbitration award regarding hiring. Therefore, the failure to make a factual finding on plaintiffs' arbitration award point is harmless with regard to future members of the fire department.
 
 
 50
 Nor does the failure to make a finding on the arbitration point with regard to future applicants to the fire department require a remand. The reason is that it was not error to exclude from the class "all male minorities who may apply for employment." The district court's decision must be upheld unless it was an abuse of its discretion. Aleknagik Natives Ltd. v. Andrus, --- F.2d ---- (No. 78-2986 (9th Cir. April 7, 1980).
 
 
 51
 The rule is that a named representative for a plaintiff class must be injured in the same way as all members of the class. Id. The district court did not abuse its discretion in excluding future applicants because they are injured in a different manner than the named plaintiffs, who are present employees, of the Oakland Fire Department.
 
 
 52
 Therefore, because the class correctly excluded future applicants of the fire department and because future members of the fire department had no standing to raise the arbitration enforcement argument, the class expansion ruling, the case need not be remanded.
 
 
 53
 Affirmed.
 
 
 
 *
 The Honorable ROBERT A. GRANT, Senior United States District Judge for the Northern District of Indiana, sitting by designation
 
 
 [1]
 Hull v. Cason was filed in Alameda Superior Court, No. 451337-9. An appeal from part of the decision was heard by the First District, 88 Cal.App.3d 768, 151 Cal.Rptr. 438 (1st Dist. 1978). The California Supreme Court granted hearing, No. SS 24-004. On June 19, 1980, the California Supreme Court retransferred Hull back to the First District, Division One, --- Cal.3d ----, 165 Cal.Rptr. 639, 612 P.2d 473
 
 
 [2]
 See p. 824, infra, for a discussion of this allegation with regard to future members of class
 
 
 [3]
 Plaintiffs have not cited, nor has our own research revealed, any cases that suggest that the California Fair Employment Practice Act or the Meyers-Milias-Brown Act creates a duty of fair representation. The duty of fair representation is, for the most part, a federally-created right. See Steele v. Louisville & Nashville Railroad Co., 323 U.S. 192, 202-03, 65 S.Ct. 226, 231-32, 89 L.Ed. 173 (1944); Directors Guild of America, Inc. v. Superior Court, 64 Cal.2d 42, n.3, 48 Cal.Rptr. 710, 409 P.2d 934 (1966) (In Bank); Lehto v. Underground Construction Co., 69 Cal.App.3d 933, 944, 138 Cal.Rptr. 419, 423 (1st Dist. 1977); but see Lerma v. D'Arrigo Bros. Co. of California, 77 Cal.App.3d 836, 841-42, 144 Cal.Rptr. 18, 20-21 (1978) (duty of fair representation implied even though the federal statute did not provide that the union was the exclusive bargaining agent)