In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-2823

ROBERT GREEN,

*Plaintiff-Appellant,*

*v.*

AMERICAN FEDERATION OF TEACHERS / ILLINOIS FEDERATION OF
TEACHERS LOCAL 604,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 1162 — **Charles R. Norgle**, *Judge.*

ARGUED JANUARY 10, 2014 — DECIDED JANUARY 23, 2014

Before FLAUM and EASTERBROOK, *Circuit Judges*, and
GRIESBACH, *District Judge*.[*]

EASTERBROOK, *Circuit Judge*. In 2010 Aurora East School
District 131 fired Robert Green from his position as a teacher.
He asked his union to pursue a grievance under a collective

[*] Of the Eastern District of Wisconsin, sitting by designation.

bargaining agreement; the union refused. He also asked the union to represent him in a suit against the school district under the Teacher Tenure Act, 105 ILCS 5/24-12; the union said no to that request as well. Green sued on his own, won, and has been reinstated. This federal suit contends that his union abandoned him because of his race, violating the Civil Rights Act of 1964, which applies to unions as well as to employers. 42 U.S.C. §2000e–2(c).

Green, who is black, contends that the union has represented comparable white employees in grievance proceedings and litigation under the Tenure Act. He also maintains that the union retaliated against him because he had opposed earlier discrimination. Retaliation is forbidden by §2000e–3(a); this provision applies to labor organizations and employers alike. The union told Green in writing that, because he sued it (and its officers) over other actions, it would no longer take his side in dealings with the school district. Green maintains that those earlier disputes concerned race discrimination, making the union's current stance an example of retaliation against a person "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Ibid*. Green also contends that the union discriminated against him because of his sex; that contention is undeveloped, and we do not mention it again.

The district judge called Green's evidence "conclusory" without explaining why. 2013 U.S. Dist. LEXIS 106610, *2 (N.D. Ill. July 24, 2013). But then the judge did not need to, because he also thought that Green could not succeed even if

the union had blatantly discriminated and handed its victim an engraved admission. The National Labor Relations Act does not apply to employees of state or local government, so the union did not have a duty of fair representation as a matter of federal law. The district court also concluded that Illinois law does not require teachers' unions to represent teachers by filing grievances under a collective bargaining agreement or suits under the Tenure Act. As the judge saw matters, a union cannot be liable under Title VII unless it first violates a duty created by statute or contract. The judge wrapped up: "Because Green fails to meet his prima facie burden to establish that the Union breached the CBA or owed a duty of fair representation to him, the Court need not address whether the Union had any discriminatory animus." *Id*. at *11. The district court granted summary judgment to the union before discovery commenced.

Neither §2000e–2(c) nor §2000e–3(a) makes anything turn on the existence of a statutory or contractual duty violated by the act said to be discriminatory. The former section forbids discrimination by any labor organization, and the latter forbids retaliation against a person who has asserted rights under Title VII or supported another person's assertion of rights. The district court did not analyze the language of either section. Nor did it recognize that the application of Title VII to employers does not depend on a statute or contract outside of Title VII. If a person applies for work and is rejected on account of race, the employer has not broken a contract or violated any statute (other than Title VII itself), yet no one doubts that the victim can recover under Title VII. And if an employer fires someone on account of race, again it does not matter whether a contract has been broken. Otherwise Title VII would not apply to at-will employment.

Nothing in the text or genesis of Title VII suggests that claims against labor organizations should be treated differently. Labor organizations were included when Title VII was enacted in 1964 in part because some states had laws authorizing (even requiring) employers and unions to discriminate against blacks. Many unions had negotiated collective bargaining agreements under which certain jobs were allocated to white workers and others to black workers, or workers of different races were paid different wages for the same tasks. On the district court's understanding of Title VII, these statutes and contracts would foreclose the possibility of relief against unions. Yet a principal objective of the federal statute was to require labor organizations to disregard those statutes and contracts and to end racial differences in treatment.

The earliest decisions under the Civil Rights Act of 1964 arose from clashes between state laws favoring or commanding segregation and the new federal prohibition. See, e.g., *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241 (1964); *Katzenbach v. McClung*, 379 U.S. 294 (1964). In many other cases, courts directed unions and employers to ignore state statutes and collective bargaining agreements that authorized race discrimination in employment. See, e.g., *Taylor v. Armco Steel Corp.*, 429 F.2d 498 (5th Cir. 1970); *United States v. Electrical Workers*, 428 F.2d 144 (6th Cir. 1970); *United States v. Sheet Metal Workers*, 416 F.2d 123 (8th Cir. 1969). If some duty external to Title VII is essential to a prima facie case, however, all of these decisions must be wrong.

The district court's approach has a further problem. It would make Title VII pointless. Unless a contract, or some other statute, gave the plaintiff an entitlement, Title VII would do nothing. Yet if a union has, and violates, such a

duty, then a remedy may be had under that statute or contract. Title VII would be otiose, and claims of discrimination against unions would be either unavailing or unnecessary.

Instead of locating its extrinsic-duty requirement in the text or history of Title VII, the district court drew it from *Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 866 (7th Cir. 1997), which states that to have a prima facie case of discrimination against a labor union a worker must show that: "(1) the [employer] violated the collective bargaining agreement between the union and the [employer]; (2) the [union] breached its own duty of fair representation by letting the breach go unrepaired; and (3) that some evidence indicates animus against [a protected class] motivated the [union]." This passage was dictum; Greenslade lost because he could not show discrimination, rather than for inability to prove the violation of an extrinsic duty.

The passage also conflates Title VII with the elements of a hybrid breach-of-contract / duty-of-fair-representation claim against an employer and union under 29 U.S.C. §185. The list in *Greenslade* restates the ingredients of a hybrid contract/DFR suit. See, e.g., *Vaca v. Sipes*, 386 U.S. 171 (1967). *Greenslade* got the language from *Bugg v. Allied Industrial Workers Local 507*, 674 F.2d 595, 598 n.5 (7th Cir. 1982), which expressly attributed it to *Vaca* and other hybrid contract/DFR opinions. This approach does not bear any evident relation to Title VII, and we now withdraw the language.

When the Supreme Court established the elements of a Title VII prima facie case in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), it did not include any element that depended on breaking a contract. In the 40 years since *McDonnell Douglas*, courts regularly have restated or modified the

elements to cover new situations, and members of this court have suggested that the approach today causes more problems than it solves. See, e.g., *Coleman v. Donahoe*, 667 F.3d 835, 862–63 (7th Cir. 2012) (concurring opinion speaking for the entire panel). A court of appeals is not authorized to abjure a framework that the Supreme Court has established, but we also are not authorized to add to that framework in a way that causes Title VII as administered to include elements missing from Title VII as enacted. A claim against a labor organization under §2000e–2(c)(1) or §2000e–3(a) does not depend on showing that either the employer or the union violated any state statute or contract. Such a requirement cannot properly be added as part of the prima facie case.

If the union would have processed Green's grievance or represented him under the Tenure Act had he been white—or had he refrained from complaining about other discriminatory episodes—then the union violated Title VII. On remand, the district court should allow discovery bearing on those issues and should not be quick to condemn as "conclusory" or "self-serving" any affidavit Green files in an effort to satisfy his burden. See *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003); *Hill v. Tangherlini*, 724 F.3d 965, 967 & n.1 (7th Cir. 2013).

VACATED AND REMANDED