**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROSEMARY GARITY,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>APWU NATIONAL LABOR<br>ORGANIZATION,<br>*Defendant-Appellee.* | No. 13-15195<br><br>D.C. No.<br>2:11-cv-01109-PMP-CWH<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Nevada
Philip M. Pro, Senior District Judge, Presiding

Argued and Submitted November 3, 2015
Pasadena, California

Filed July 5, 2016

Before: Jerome Farris, Jay S. Bybee,
and N. Randy Smith, Circuit Judges.

Opinion by Judge Bybee

## SUMMARY[*]

### Labor Law

The panel reversed the district court's dismissal of disability discrimination and retaliation claims brought against a union under the Americans with Disabilities Act.

The district court held that the ADA claims were barred by issue preclusion because of a ruling in a prior case that the union had not breached its duty of fair representation. Agreeing with the Seventh Circuit, the panel held that a prima facie claim of disability discrimination against a union does not require a showing of a breach of the duty of fair representation. Accordingly, the plaintiff's claims were not barred by issue preclusion. The panel also held that the ADA complaint was not barred by claim preclusion. It remanded the case to the district court for further proceedings.

### COUNSEL

Matthew O'Brien (argued) and Justin Beck (argued), Certified Law Students, Pepperdine University School of Law, Malibu, California; Jeremy B. Rosen, Horvitz & Levy LLP, Encino, California; for Plaintiff-Appellant.

Michael R. Hall (argued) and Matthew A. Walker; Hall, Jaffe & Clayton; Las Vegas, Nevada; for Defendant-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

BYBEE, Circuit Judge:

Rosemary Garity, a clerk at the United States Postal Service office in Pahrump, Nevada, suffers from a litany of physical and emotional disabilities. Despite her willingness to perform her job duties, Garity repeatedly complained to her representatives at the American Postal Workers Union, AFL-CIO ("APWU") that postal service management refused to accommodate her disabilities. Garity alleges that APWU, rather than filing and processing her grievances, sided with management, discriminating and retaliating against her because of her disabilities.

Garity brought two complaints against APWU in federal court, alleging a contractual breach of APWU's duty of fair representation in the first, and alleging a series of violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Nevada state tort laws in the second. After two different district court judges determined that Garity's complaints should proceed as independent actions, one district court judge (Dawson, J.) dismissed Garity's first complaint, finding that, though APWU's behavior towards Garity may have been negligent, APWU's actions were not a breach of its duty of fair representation. In light of this judgment, a second district court judge (Pro, J.) tossed Garity's second complaint, ruling that, because a prima facie claim of disability discrimination against a union necessarily required a showing of a breach of the duty of fair representation, Garity's ADA claims were barred by the issue preclusion doctrine. Garity had failed to prove a required element in her first complaint, the district court explained,

and there was no need to re-litigate that element in her second complaint.

The question before us is whether a prima facie claim for disability discrimination against a union necessarily requires a showing that the union breached its duty of fair representation. If so, the district court's application of the issue preclusion bar was proper and Garity's ADA claims fail; if not, Garity's ADA claims survive. We endorse the Seventh Circuit's reasoning in *Green v. American Federation of Teachers/Illinois Federation of Teachers Local 604*, 740 F.3d 1104 (7th Cir. 2014), and hold that a prima facie disability discrimination claim against a union does not require that a plaintiff demonstrate that the union breached its duty of fair representation. Accordingly, Garity's ADA claims are not barred by issue preclusion, and we reverse and remand to the district court for further proceedings.

I

A. *Facts*

Garity began working as a clerk at the United States Postal Service office in Pahrump, Nevada in 2008, and served as the "shop steward" of Local #7156—the Pahrump affiliate of the APWU—from 2009 to 2011.[1] Garity describes herself as "a disabled individual" suffering from a range of "physical and mental impairments" that include "heel spurs, chest pain, chronic fatigue, sleep disturbance, osteoporosis[,] myalgia,

---

[1] Our description of the facts is largely derived from Garity's complaint. We are to take these facts as true for the purposes of analyzing APWU's motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

muscle spasms and . . . cancer," as well as "anxiety disorder, major depressive disorder, [and] panic attacks." Despite her conditions, Garity asserts that she can "perform the essential functions of many of the duties available" as long as Postal Service management provides her with proper accommodations.

In 2010, Debra Blankenship was appointed postmaster of the Pahrump office. In response to perceived instances of favoritism and disparate treatment observed under the new leadership, Garity and other postal employees filed a hostile work environment grievance. At around the same time, Kathi Poulos was elected president of Local #7156, and Garity alleges that, though Poulos acknowledged Garity's grievance as "valid," she refused to process it. After Garity was unable to attend a grievance meeting in Las Vegas in early 2011 due to her disabilities, Poulos removed Garity from her shop steward position and appointed herself to the position the next day. As part of Poulos's new duties as shop steward, she was responsible for filing employment grievances raised by Garity and other Local #7156 members with Postal Service management.

In the months that followed, Garity forwarded a litany of grievances to Poulos, alleging that management improperly delayed the mail, sent her home early without pay, and committed various acts of retaliation and harassment against her. Garity informed Poulos that "the contract had been violated" and reminded Poulos that it was her "job to represent employees," but alleged that Poulos "did not investigate or file any of [her] grievances." Because Poulos "either wo[uld]n't [file] or ha[d] agreed with management to not file grievances," Garity alleges in her complaint,

"[m]anagement [was] well aware that they c[ould] do anything they want[ed] to [her] with no repercussions."

According to Garity, conditions in the Pahrump post office continued to deteriorate throughout 2011. In January, Garity asked Poulos to file a series of grievances stemming from an adverse disciplinary action taken against her by management, but Poulos refused, stating that she "already had too many grievances" to process and choosing instead to withdraw roughly a dozen of Garity's previously filed grievances. In February, the Pahrump office's management convened a meeting to discuss work assignments that accommodated Garity's disability, but rather than finding her appropriate tasks, post office management simply cut Garity's work hours. Stonewalled by Poulos, Garity approached an alternate APWU shop steward to see if he would file her grievances, but fared no better. And after Poulos refused to file additional grievances, withdrew others, and failed to represent her in the proceedings on still others, Garity filed Equal Employment Opportunity Commission ("EEOC") and National Labor Relations Board ("NLRB") complaints against her union for discrimination in February and March.

In April of 2011, Garity alleges that she was suspended for thirty days after an incident in which Garity refused to go into a room alone with a male employee against whom she had pending sexual harassment charges. An altercation with Blankenship ensued, and Poulos was called to the office. Garity alleges that Poulos did not sufficiently defend her in a three-page letter Poulos later wrote describing the incident, and that the letter was in fact used to justify Garity's suspension. Garity complained about Local #7156's actions to the national APWU to no avail, and, after repeatedly

requesting additional disability accommodations, Garity was fired from her position on June 11, 2011.

## B.  *Procedural History*

In July 2011, Garity filed two separate complaints against APWU in federal court.[2]  Her first complaint ("Complaint One") alleged that APWU breached its duty of fair representation by violating provisions of its collective bargaining agreement.  Garity, acting pro se, styled these claims as "breach of contract" claims.  This complaint was assigned to the Honorable Kent Dawson of the District of Nevada.

Garity's second complaint—the one at issue here—was assigned to the Honorable Philip Pro of the District of Nevada ("Complaint Two").  In this complaint, Garity pleaded claims for disability discrimination under Title VII of the Civil Rights Act of 1964 and the ADA, Nevada state tort claims for negligent retention and intentional infliction of emotional distress, and claims for conspiracy to deprive her of rights under 42 U.S.C. §§ 1985 and 1986.

In August 2011, Garity filed a "Motion to Keep Cases Separated as Originally Filed," explaining that her "claims of discrimination and the tort claims clearly involve different questions of law from breach of contract/failure to represent, breach of the APWU Constitution, . . . etc."  Five days later, the APWU moved to consolidate Garity's two complaints into a single case, arguing that though "the legal claims differ, the facts alleged [in the two complaints] are virtually

---

[2] Garity's complaints were originally filed against both APWU and Local #7156.  The latter is no longer a party to this litigation.

identical." In October 2011, in an unexplained order, Judge Pro granted Garity's motion and denied APWU's motion. Three months later, Judge Dawson also denied APWU's motion, finding that the "Defendants have failed to show that both complaints contain common questions of law or fact sufficient to justify consolidating them." Accordingly, both claims proceeded independently.

### 1. Complaint One

After giving Garity a chance to amend her complaint, Judge Dawson granted APWU's motion to dismiss Complaint One with prejudice on July 18, 2012. The court found that Garity's "claims [were] an amalgam of legal conclusions" that did not support the proposition that "Defendants breached their duty of fair representation." The court recognized that the union is afforded wide latitude to attend to its internal business and found that Garity's "factual allegations" suggested "at worst negligence." Garity appealed the court's decision in Complaint One to this court, and we affirmed Judge Dawson's dismissal order in a unanimous memorandum disposition. *Garity v. APWU-AFL-CIO*, 585 F. App'x 383 (9th Cir. 2014) (mem.). The Supreme Court denied Garity's petition for a writ of certiorari. *Garity v. APWU-AFL-CIO*, 136 S. Ct. 71 (2015) (mem.).

### 2. Complaint Two

After Garity filed an amended complaint including additional factual details, Judge Pro granted in part and denied in part APWU's motion to dismiss. Beginning with

Garity's ADA claims,[3] the district court found that Garity had stated a claim for disability discrimination. The court explained that Garity had adequately alleged that APWU—"motivated, at least in part, by animus towards [Garity]'s disabilities or requests for accommodation"— "refused to file grievances and joined in [the Postal Service's] discriminatory practices," triggering a series of adverse employment actions. The district court also determined that Garity had "pled sufficient facts" to support her retaliation claim, noting that she had raised the inference of a "causal link" between protected activity, like filing union grievances, and her suspension and termination. The district court, however, granted APWU's motion to dismiss as to Garity's hostile work environment claim, noting that, though Garity had demonstrated that "she subjectively found her work environment hostile and abusive," she had not shown that a "reasonable person" would agree or that any "mental abuse, harassment, or bullying" was "based on her disability."

---

[3] Garity's amended complaint pleads her disability discrimination claims as Title VII violations, but disability is not a protected class under that statute. *See* 42 U.S.C. § 2000e-2(c) (prohibiting discrimination by unions based on "race, color, religion, sex, or national origin"). However, Garity also references violations of the "ADA of 1990," in her amended complaint. "Because [Garity] appeared *pro se* in the district court, we [are to] liberally construe [her] pleadings." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). Accordingly, as the district court did below, we will treat Garity's self-styled "Title VII" claims as discrimination claims under the ADA. *See* 42 U.S.C. § 12111(2) (listing "labor organization[s]" as covered entities under the ADA); *see also* § 12112(b) (outlining disability discrimination claims under the ADA).

For clarity, we note that Garity alleged four theories of liability under the ADA: disparate treatment (disability discrimination), failure to accommodate, retaliation, and hostile work environment.

A few months later, APWU took another crack at Garity's complaint in a new motion to dismiss. Pointing to our decision in *Beck v. United Food and Commercial Workers Union, Local 99*, 506 F.3d 874 (9th Cir. 2007), APWU argued that an element of a prima facie ADA claim against a union is a "breach" of the "duty of fair representation," and because Judge Dawson previously dismissed Garity's contractual claims in Complaint One for failing to allege precisely that element, Complaint Two was necessarily barred by the doctrine of issue preclusion.

Despite its earlier ruling, the district court reversed course in a brief order dismissing Complaint Two in full. The court found that Garity's ADA claims "must be dismissed because each requires [Garity] to prove the . . . breach of the duty of fair representation," a showing that Judge Dawson, analyzing the same "nucleus of operative facts," had previously determined that Garity had not made. The court did not cite any case law to support its formulation of the elements of a prima facie ADA claim against a union, nor did it explain why it had not discussed the breach element in its earlier ruling sustaining Garity's ADA claims.[4]

Garity timely appealed to this court. After one round of briefing, the Appellate Commissioner appointed Garity pro bono counsel, authorized replacement briefing, and specifically noted that "[i]n addition to any other issues the parties address in their briefs, they shall address the elements of a Title VII claim against a union in light of subsequent

---

[4] The district court also dismissed Garity's tort claims under Nevada law, as well as her federal claims under 42 U.S.C. §§ 1985 and 1986. We address those claims in an unpublished memorandum disposition filed with this opinion.

clarification in the law." Order at 2, *Garity v. APWU Nat'l Labor Org.*, No. 13-15195 (9th Cir. Sept. 10, 2014), ECF No. 24. We have jurisdiction under 28 U.S.C. § 1291.

## II

"We review the district court's grant of a motion to dismiss *de novo*." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). "When ruling on a motion to dismiss, we accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Id*. "Unless it is absolutely clear that no amendment can cure the defect, . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam).

We also review the district court's ruling on issue preclusion *de novo*. *United States v. Smith-Baltiher*, 424 F.3d 913, 919 (9th Cir. 2005).

## III

Garity's primary contention on appeal is that the district court erred by dismissing her ADA claims against APWU on issue preclusion grounds, or collateral estoppel. She asserts that, because a disability discrimination claim against a union does not require that a plaintiff demonstrate a breach of the duty of fair representation by the union, her inability to make such a showing on the contract claims in her first complaint is not necessarily fatal to the ADA claims in her second complaint. Before addressing Garity's issue preclusion argument, however, we begin by answering APWU's

assertion that Garity's entire second complaint should be barred by the doctrine of claim preclusion.

## A. *Garity's Second Complaint Is Not Barred by Claim Preclusion*

As a threshold matter, APWU argues that Garity's second complaint—the complaint at issue here—should have been barred in its entirety by the doctrine of claim preclusion, or res judicata. Because both of Garity's complaints were "predicated on discrimination and a general failure of the APWU to represent [her]," APWU notes, "all of the grounds in Garity's Complaint [Two] could have been asserted in her Complaint [One]." Appellee's Br. 32. Put more simply, APWU argues that because all of Garity's causes of action derive from the same factual foundation, she should not have split them into two discrete complaints and should have brought them in one consolidated action.[5] We disagree.

"Claim preclusion 'applies when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between the parties.'" *Cell Therapeutics, Inc. v. Lash Grp. Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2009) (quoting *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002)).

---

[5] The Federal Rules of Civil Procedure permit a party to "join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Garity could have brought all of her claims in a single complaint. But Rule 18 is "permissive"; it is the doctrine of claim preclusion that "focuses on what a party ought to have litigated in the first action." Larry L. Teply & Ralph U. Whitten, *Civil Procedure* 622, 962–63 (3d ed. 2004). The question, then, is whether Garity was *obligated* to bring her claims in a single complaint because a decision in one suit would preclude the assertions of her claims in the second suit.

Here, there is no dispute that the district court's order dismissing Complaint One on 12(b)(6) grounds was a final judgment on the merits, *see Stewart*, 297 F.3d at 957, or that the parties to each suit are identical. The application of the claim preclusion doctrine, then, hinges on an analysis of whether there is an identity—or equivalency—of claims between Garity's two complaints.

To determine if there is an "identity of claims," we look to four factors, "which we do not apply mechanistically":

> (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions.

*Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005). Though all four factors are considered, "[r]eliance on the transactional nucleus element is especially appropriate because the element is 'outcome determinative.'" *ProShipLine Inc. v. Aspen Infrastructures LTD*, 609 F.3d 960, 968 (9th Cir. 2010) (quoting *Mpoyo*, 430 F.3d at 988). The party asserting a claim preclusion argument "must carry the burden of establishing all necessary elements." *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) (quoting 18 Wright & Miller, *Federal Practice and Procedure* § 4405, at 83 (2d ed. 2002)). Here, that party is APWU.

Though APWU can quickly check-off the "same evidence" factor,[6] the other elements are not quite so clearcut. Turning to the first element, "[w]hether two suits arise out of the 'same transactional nucleus' depends upon whether they are related to the same set of facts and *whether they could conveniently be tried together*." *ProShipLine*, 609 F.3d at 968 (emphasis in original) (second set of internal quotation marks omitted). Here, two different district court judges decided that Garity's two complaints *could not* be conveniently tried together. Indeed, as Judge Dawson explained in denying APWU's motion to consolidate, APWU "failed to show that both complaints contain common questions of law or fact sufficient to justify consolidating them." That said, district courts have "broad discretion" to consolidate complaints, *Inv'rs Research Co. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989); *see also* Fed. R. Civ. P. 42(a) (noting that a court "*may*," but is not *required* to, consolidate actions if they "involve a common question of law or fact" (emphasis added)), and a decision to refuse consolidation does not necessarily bear on the applicability of the claim preclusion doctrine. Additionally, there is no serious dispute that the same nucleus of facts gave rise to both complaints—Garity admitted as much by cutting and pasting her factual allegations into both complaints. This element leans in favor of APWU.

The "rights and interests" element strongly favors Garity. APWU has an obvious interest in avoiding successive litigation over claims arising from the same set of facts, and

---

[6] Garity lifted substantial portions of her factual claims from her first complaint and inserted them directly into her second complaint. The evidence presented is not just "substantially the same"—it is identical.

the public has an interest in "avoiding inconsistent results and preserving judicial economy." *Clements v. Airport Auth.*, 69 F.3d 321, 330 (9th Cir. 1995). Here, however, the district courts—both of them—found that judicial economy would be served by keeping the cases separated and litigating them independently. The question of whether Garity should be forced to join her claims in a single suit was litigated and decided against APWU. Two district courts independently determined that Garity's claims—her "rights and interests"— in Complaint One were distinct from her "rights and interests" in Complaint Two.

The "infringement of the same rights" element also favors Garity. While our precedents do not offer a great deal of clarification as to how this element should be analyzed, we generally perform a basic matching exercise. *See, e.g.*, *Sidhu v. Fletco Co.*, 279 F.3d 896, 900 (9th Cir. 2002) (explaining that "rights asserted in the two actions [we]re different" because they involved infringement of different provisions of a contract). Garity's first complaint alleges infringement of her rights under the contract APWU members have with their union, while her second complaint alleges infringement of her right to be free from unlawful discrimination based on her disability. Put simply, the claims here do not match. One complaint sounds in contract, the other in federal anti-discrimination laws and tort.

This four-factor test leaves us with something of a split decision, but, on balance, the test leans hard in Garity's direction. The purpose of the claim preclusion doctrine is to avoid successive litigation when all of a plaintiff's claims derive from a common factual core and can be efficiently and effectively tried together. But implicit in the doctrine is the assumption that the plaintiff *actually had the chance to be*

*heard* on all of her claims in the first proceeding. Indeed, as the Supreme Court has explained, "invocation of res judicata or claim preclusion" requires that "the first adjudication offer[ed] a full and fair opportunity to litigate." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481 & n.22 (1982).

Here, Garity was not offered a full and fair opportunity in the proceedings concerning Complaint One to litigate the claims she included in Complaint Two because *Judges Dawson and Pro kept the claims separate*. It would be an odd outcome indeed that by (twice) beating back APWU's motion to consolidate her complaints, Garity unwittingly stepped on a claim preclusion landmine by litigating Complaint One independently. After reading two district court orders explicitly stating that her two complaints were sufficiently distinct as to warrant keeping them separated, we cannot reasonably expect that Garity, acting pro se, would have the wherewithal to request that the court reverse its order and consolidate her complaints in order to fend off the claim preclusion bar. As the Second Restatement of Judgments point out, there is a general exception to the claim preclusion doctrine when the court "has expressly reserved the plaintiff's right to maintain the second action."**[7]**

---

**[7]** APWU references our unpublished decision in *Ramos v. Apfel*, 205 F.3d 1352 (9th Cir. 1999) (unpublished table decision), for the proposition that claim preclusion can still apply when district court judges refuse to consolidate cases. First, this citation to pre-2007 unpublished authority violates our rules, and we need not consider it. *See* 9th Cir. R. 36-3(c). Second, that case involved a litigant's efforts to have precisely the same ALJ ruling reviewed by two different district judges after a third district judge did not catch that the litigant was seeking "duplicate review." That situation is in no way analogous to the instant case.

Restatement (Second) Judgments § 26(1)(b). That is precisely what happened here.

The "full and fair opportunity to litigate" requirement operates as a safety valve to give courts some leeway in the application of the claim preclusion doctrine. That leeway is warranted here: Garity should not be faulted for relying on the decisions of two district court judges mandating that her complaints be kept separate. Garity is not attempting to take a second bite at her first apple; she is requesting a first bite at her second apple—an apple two district court judges told her to keep in a separate basket. We reject APWU's claim preclusion argument, and hold that Garity's second complaint is not barred by the adverse judgment she received as to her first complaint.

B. *Garity's Second Complaint Is Not Barred by Issue Preclusion Because a Claim of Disability Discrimination Against a Union Does Not Require a Showing of a Breach of the Duty of Fair Representation*

Even though we find that Garity's second complaint survives APWU's claim preclusion challenge, before her ADA causes of action in that complaint can be considered on their merits, those claims must also survive APWU's issue preclusion challenge.

---

APWU also cites *Yapp v. Excel Corp.*, 186 F.3d 1222 (10th Cir. 1999). *Yapp* is also quite different from the case at bar. There, the plaintiff (assisted by counsel) signed a settlement agreement with the defendant to resolve his first complaint, aware that he might trigger a claim preclusion issue as to his second complaint. *Id.* at 1229. As the Tenth Circuit explained, "Yapp chose to forego a full and fair opportunity to litigate [his second claim] in order to satisfy his immediate appetite" for a settlement. *Id*. at 1230. Garity made no such choice here.

APWU argues that a prima facie disability discrimination claim against a union requires a plaintiff to demonstrate that the union breached its duty of fair representation; because Judge Dawson ruled that Garity had failed to make that showing as to her breach of contract claims in Complaint One, APWU asserts—and the district court held—that she is barred by the doctrine of issue preclusion from relitigating that precise issue in Complaint Two. In support of this proposition, APWU directs us to our decision in *Beck v. United Food and Commercial Workers Union, Local 99*, 506 F.3d 874 (9th Cir. 2007), and argues that we have already addressed the elements of a discrimination claim against a union and have come down in its favor.

For her part, Garity argues that *Beck* leaves this question open, and asks us to side with the Seventh Circuit's recent decision in *Green v. American Federation of Teachers/Illinois Federation of Teachers Local 604*, 740 F.3d 1104 (7th Cir. 2014), where that circuit held that a breach of the duty of fair representation was *not* part of a prima facie Title VII discrimination claim against a union. Because, Garity argues, the breach element litigated adversely to Garity in Complaint One has no bearing on her ADA claims in Complaint Two, issue preclusion does not apply.[8]

---

[8] There is no dispute that if Garity's ADA claims require her to show that APWU breached its duty of fair representation, she loses on issue preclusion grounds. Issue preclusion, or collateral estoppel, "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892 (internal quotation marks omitted). To determine if the issue preclusion doctrine applies, we apply a three-prong test, asking if "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended

Garity gets the better of the argument. We agree that *Beck* does not control our decision here, as it did not add a "breach of the duty of fair representation" element to prima facie claims under anti-discrimination statutes like Title VII or the ADA. Nor do we think that such an element should be included. As the Seventh Circuit's persuasive decision in *Green* explains, nothing in Title VII suggests that union members must demonstrate a breach of the union's contractual duty to provide fair representation before stating a claim for racial, religious, or gender discrimination under Title VII. *Green*, 740 F.3d at 1105 (analyzing a prima facie claim under 42 U.S.C. § 2000e-2(c)). And because we have long analyzed anti-discrimination statutes like Title VII and the ADA in parallel fashion, we hold that the *Green* court's analysis applies with equal force to union members with disabilities seeking to challenge their union's discriminatory actions under the ADA.[9] Accordingly, Garity's ADA claims

---

with a final judgment on the merits; and (3) the party against whom [issue preclusion] is asserted was a party or in privity with a party at the first proceeding." *Paulo v. Holder*, 669 F.3d 911, 917 (9th Cir. 2011) (internal quotation marks omitted) (alteration in original).

Here, Judge Dawson specifically determined that Garity's allegations in Complaint One did "not support claims that [APWU] breached [its] duty of fair representation," and we affirmed that ruling, *Garity*, 585 F. App'x 383. If a breach of the duty of fair representation is a necessary element for Garity's ADA claims in Complaint Two, Judge Dawson's earlier ruling on that element would have preclusive effect and Garity's ADA claims would fail.

[9] We recognize that both *Beck* and *Green* addressed claims for Title VII violations against unions rather than claims under the ADA as we have here. *See Beck*, 506 F.3d at 876; *Green*, 740 F.3d at 1105. However, due to the similarities in language and purpose between the two statutes, courts around the country—unless they find a good reason to do otherwise—generally use Title VII precedent to interpret ADA claims. *See, e.g.*, *T.B.*

in her second complaint are not barred by issue preclusion because she need not prove a breach of the duty of fair representation to make out a prima facie case of disability discrimination.

---

*ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 472–73 (9th Cir. 2015) ("We apply the Title VII burden-shifting framework, as established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to retaliation claims under the ADA."); *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006) ("The statutory scheme and language of the ADA and Title VII are identical in many respects. . . . Title I of the ADA invokes the same powers, remedies and procedures as those set forth in Title VII." (internal quotation marks omitted)); *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 233 (5th Cir. 2001) ("We conclude that the language of Title VII and the ADA dictates a consistent reading of the two statutes."); *Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1017 (7th Cir. 1996) ("[I]n analyzing claims under the ADA, it is appropriate to borrow from our approach to the respective analog under Title VII."); *cf. EEOC v. Waffle House, Inc.*, 534 U.S. 279, 285–97 (2002) (outlining the similarities in the EEOC's enforcement powers under Title VII and the ADA, and using Title VII precedent to analyze ADA claims). *But see Brown v. City of Tucson*, 336 F.3d 1181, 1188–91 (9th Cir. 2003) (declining to apply "Title VII's burden-shifting or hostile environment frameworks" to plaintiff's claim under 42 U.S.C. § 12203(b) because the Fair Housing Act served as a better textual analog).

In light of this weight of authority, we do not believe that whether discrimination by a union is based on the plaintiff's race or gender or whether it is based on the plaintiff's disability makes a meaningful difference to the analysis at hand. Indeed, both of the parties vigorously argue that a Title VII decision should answer this ADA question (*Green* for Garity, *Beck* for APWU). Accordingly, though our decision today answers only the question before us—whether a prima facie *disability discrimination* claim brought against a union under the *ADA* requires proof that the union breached its duty of fair representation—our reasoning is informed and supported by an analysis of the same question in the Title VII context.

1.  Our decision in *Beck* did not hold that breach of the duty of fair representation is an element in a Title VII discrimination claim brought against a union

In *Beck*, we addressed a Title VII claim brought by Cheryl Beck, an employee at a grocery store, against the union that represented her. 506 F.3d at 877–78. In a situation quite similar to this one, Beck argued that her union's refusal to arbitrate her grievances against the grocery store was due to discrimination on the basis of her sex, a violation of Title VII. *Id.* In addition to her discrimination claim, Beck also brought an independent "duty of fair representation claim" against her union. *Id.* at 878.

We first analyzed Beck's breach of the duty of fair representation claim. Noting that the "duty of fair representation" is "imposed on labor organizations because of their status as the exclusive bargaining representative for all of the employees in a given bargaining unit," *id.* at 879 (internal quotation marks omitted), we found that Beck's union "engaged in arbitrary conduct that substantially injured a member," a breach of the union's legal and contractual duties to its members, *id.* at 880–81.

Next, we moved to Beck's Title VII claim. We began by declaring that "[a] union violates Title VII if it deliberately declines to pursue a member's claim because of the member's gender." *Id.* at 882. We also noted that the "standard burden-shifting framework established by the Supreme Court in *McDonnell Douglas*, . . . applie[d] to a Title VII action against a union," and explained that "a union member can make a prima facie claim of discrimination by introducing evidence that the member 'was singled out and treated less favorably than others similarly situated on account of race or

any other criterion impermissible under the statute.'" *Id*. (quoting *Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531, 537 (9th Cir. 1982)). Nowhere in our extensive discussion of the background of Title VII law in a union context did we discuss a "duty of fair representation" element or cite to any cases that include the element as part of a prima facie Title VII claim. *See id.* at 882–84.

It is not until we describe the district court's analysis that the first mention of an additional element is made. Noting that the district court was "[r]elying on *EEOC v. Reynolds Metals Co.*, 212 F. Supp. 2d 530, 539–40 (E.D. Va. 2002)," we quoted the district court exactly:

> [T]he district court stated, "To establish a Title VII sex discrimination claim against a union, an employee must show that: (1) the employer violated the collective bargaining agreement with respect to the employee; (2) the union breached its duty of fair representation by allowing the breach to go unrepaired; and (3) there is some evidence of gender animus among the union."

*Id*. at 884. We also recognized the provenance of the three-factor test used by the district court, explaining that it was "derived from a Seventh Circuit test for establishing a prima facie case of discrimination, *see Bugg v. Int'l Union of Allied Indus. Workers of Am.*, 674 F.2d 595 (7th Cir. 1982)," and noted that the Seventh Circuit's *Bugg* test was "generally consistent with the *McDonnell Douglas* framework." *Beck*, 506 F.3d at 884.

And that is the end of our analysis on the issue in *Beck*. We did not delve into whether the *Bugg* test was the controlling test in our circuit, nor did we cite any of our cases that apply the Seventh Circuit's *Bugg* test.[10]   In all other respects, we considered the action for breach of the duty of fair representation and the action for violation of Title VII separately.   *See Beck*, 506 F.3d at 886.   If we were establishing *Bugg*'s preeminence in this circuit, we would have been more explicit about what we were doing; a covert smuggling of a sister circuit's test into our case law through a reference to the district court's citation of an out-of-circuit district court case seems unlikely.   The better reading of our *Beck* decision is that we were explaining how the district court reached its outcome, addressing out-of-circuit precedent in an exploratory or academic fashion, and holding that, because Beck had already proven a breach of the duty of fair representation on a separate claim, whether or not that element was included in the Title VII prima facie case had no bearing on her ultimate success under that statute.   We had no need to parse the Seventh Circuit's additional element because, in *Beck*, the nature of the violation of the duty of fair representation was also sufficient to prove a Title VII violation under the traditional *McDonnell Douglas* framework.   *See* 506 F.3d at 884 (observing that the district

---

[10] Nor could we have, because such cases simply do not exist.  Aside from *Beck*'s discussion of *Bugg*, the Seventh Circuit's former test makes an appearance in only one of our cases, an unpublished memorandum disposition from 1994: *Sanders v. Los Angeles Unified School District*, 42 F.3d 1402 (9th Cir. 1994) (unpublished table decision).  There we stated that *Bugg* "set out a three-pronged test for establishing a prima facie claim of discrimination against a union," but we applied that test to the plaintiff's claim under 42 U.S.C. § 1981. 42 F.3d at *1.  We then applied a test derived from *McDonnell Douglas*, not *Bugg*, to the plaintiff's Title VII claim.  *Id*. at *2.

court had "held that the union's 'failure to repair the breach [of the collective bargaining agreement] was due to a discriminatory motivation based on plaintiff's sex'").

Our decision in *Golden v. Local 55 of the International Association of Firefighters*, 633 F.2d 817 (9th Cir. 1980), lends credence to our reading of *Beck*. There, Black firefighters brought actions against their union for violation of Title VII and breach of the duty of fair representation, and we found that "[t]he same facts underl[ay] [both] the firefighters' Title VII . . . and 'unfair representation' claims." *Golden*, 633 F.2d at 819. We found no evidence that the union had breached its duty of fair representation, *id.* at 821–22; 823–24, yet we also gave a lengthy analysis of plaintiffs' Title VII claims, *id.* at 822–23. If "breach of the duty of fair representation" was a necessary element of a Title VII claim against a union, we would have had no need to separately offer that Title VII analysis—once we established that Local 55 did not breach the duty, the case would have been over. Had *Beck* required proof of a breach of the duty of fair representation before a plaintiff could bring a Title VII action against a union, it would have added a new element to the test set out in *Golden*, and thus undermined that decision. *See also Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 671–74 (9th Cir. 1988) (treating separately Title VII and duty of fair representation claims against a union).

Accordingly, we do not read *Beck* to require a plaintiff bringing a Title VII discrimination claim—or, by analogy, an ADA disability discrimination claim—against a union to prove a breach of the union's duty of fair representation in his prima facie case, nor can we find any other circuit precedent that requires as much. Rather, we take *Beck* at its word that the key inquiry in a Title VII case against a union is whether

the union "deliberately declines to pursue a member's claim because of" a protected classification.  506 F.3d at 882.  As such, we hold that *Beck* does not compel a different result than we reach here.

   2.   The Seventh Circuit's decision in *Green*

   We think that the better rule is set out in the Seventh Circuit's recent decision in *Green v. American Federation of Teachers/Illinois Federation of Teachers Local 604*, in which that court rejected its prior analysis in *Bugg* and held that a "claim against a labor organization under [Title VII] does not depend on showing that . . . the union violated any state statute or contract."  740 F.3d at 1107.  The court explained that "the application of Title VII to *employers* does not depend on a statute or contract outside of Title VII," and that "[n]othing in the text or genesis of Title VII suggests that claims against *labor organizations* should be treated differently."  *Id.* at 1105 (emphasis added).  To support its holding, the *Green* court looked to the text of the statute, discussed the history and purpose of Title VII, and referred to Supreme Court precedent setting forth the prima facie elements of a Title VII claim.  *See id.* at 1105–07.

   First, *Green* noted that Congress explicitly applied Title VII to unions by way of § 2000e-2(c).  *Id.* at 1105–06; *see also* 42 U.S.C. § 2000e-2(c) ("It shall be an unlawful employment practice for a labor organization (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin . . . .").  The court explained that when the law was enacted in 1964, "some states had laws authorizing (even requiring) employers and unions to discriminate against blacks," and "[m]any unions had

negotiated collective bargaining agreements" with racially discriminatory elements. *Green*, 740 F.3d at 1105. A "principal objective of the federal statute," then, "was to require labor organizations to disregard those statutes and contracts and to end racial differences in treatment." *Id*. at 1106.

With Title VII's anti-discriminatory purpose front-of-mind, the *Green* court found that premising Title VII's applicability on whether a union had violated a contract or statute *in addition to* committing a discriminatory act would render the statute "pointless." *Id*. The *Green* court set out the problem succinctly:

> Unless a contract, or some other statute, gave the plaintiff an entitlement, Title VII would do nothing. Yet if a union has, and violates, such a duty, then a remedy may be had under that statute or contract. Title VII would be otiose, and claims of discrimination against unions would be either unavailing or unnecessary.

*Id*. Put differently, if a Title VII claim required a breach of contract or a violation of some statutory duty, the plaintiff could simply sue under the contract or statute, rendering Title VII superfluous. The court then observed that the suggestion in its prior cases—including *Bugg*—that a plaintiff must show a violation of the duty of fair representation in order to sustain a Title VII action against a union "conflate[d] Title VII with the elements of a hybrid breach-of-contract/duty-of-fair-representation claim against an employer and union under 29 U.S.C. § 185." *Id*. Disapproving *Bugg*, the court

decided that "[t]his approach [did] not bear any evident relation to Title VII," and "withdr[e]w the language." *Id*.

To bolster its holding, the Seventh Circuit highlighted how absurd the union's argument would be in other contexts. *See id.* at 1105. For example, if a Title VII claim relied on breach of a contract, how could a prospective employee ever bring a claim against a prospective employer for racially biased hiring practices? Obviously no contract has been formed between the two parties because the employee was never hired, but Title VII certainly covers this interaction. Similarly, if an employer and employee have an at-will employment contract, the employer has not violated the terms of the contract by firing the employee on account of race. But again, there is no dispute that Title VII would provide the employee relief. There is no reason, the Seventh Circuit asserted, to treat claims against a union any differently. *Id.*

Next, the *Green* court pivoted to the text of Title VII and the Supreme Court's precedent setting forth the elements of a prima facie Title VII claim. *See id.* at 1105–06. A reading of the statutes "forbid[ding] discrimination by any labor organization"[11] and "forbid[ding] retaliation against a person

---

[11] 42 U.S.C. § 2000e-2(c) ("It shall be an unlawful employment practice for a labor organization (1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin; (2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or (3) to

who has asserted rights under Title VII"[12] unearths no mention of a contractual breach or statutory violation that union members must prove.  *See Green*, 740 F.3d at 1105. Nor does an analysis of *McDonnell Douglas*'s well-known roadmap of a Title VII prima facie claim reveal such requirement.[13]  Though the Seventh Circuit recognized that "courts regularly have restated or modified the elements [of a Title VII claim] to cover new situations" in the forty years since the *McDonnell Douglas* decision, it noted that a court is "not authorized to add to that framework in a way that causes Title VII as administered to include elements missing from Title VII as enacted."  *Green*, 740 F.3d at 1106–07. Demanding that a plaintiff show that "the union violated any state statute or contract . . . cannot properly be added as part of the prima facie case."  *Id*. at 1107.  We agree.

---

cause or attempt to cause an employer to discriminate against an individual in violation of this section.")

[12] 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.")

[13] 411 U.S. at 802 (A Title VII plaintiff must show "(I) that he belongs to a [protected class]; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applications from persons of complainant's qualifications.").

### 3. *Green*'s application to Garity's ADA claims

We are persuaded by the *Green* court's decision that a Title VII claim against a union does not include an extra-textual "breach of the duty of fair representation" element, and see no reason why the Seventh Circuit's analysis should not apply with equal force to the ADA claim before us here. Like Title VII, the ADA was promulgated to combat discrimination in the workplace,[14] and indeed, the statute notes that "unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, [or] religion"—the groups protected by Title VII—"individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination." 42 U.S.C. § 12101(4).[15] Like Title VII, the ADA includes labor organizations as a covered entity. *Compare* 42 U.S.C. § 2000e-2(c) *with* 42 U.S.C. § 12111(2). Like Title VII, the ADA does not refer to any element that applies only to claims brought by union members against their unions. *Compare* 42 U.S.C. § 2000e-2(c) (Title VII discrimination) *with* 42 U.S.C. § 12112 (ADA discrimination); *also compare* § 2000e-3(a) (Title VII

---

[14] *See* George Rutherglen, *Title VII as Precedent: Past and Prologue for Future Legislation*, 10 Stan. J. of C.R. & C.L. 159, 166–67 (2014) (describing the ADA as a "descendant[] of Title VII" that made Title VII's "prohibitions against discrimination on the basis of race, sex, national origin, color, and religion applicable to discrimination on the basis of . . . disability").

[15] § 12101(4) also notes that "individuals who have experienced discrimination on the basis of . . . age" have "legal recourse to redress such discrimination." Workplace discrimination on the basis of age was addressed by the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*

retaliation) *with* § 12203(a) (ADA retaliation). And, most importantly, like the prima facie Title VII claim outlined by the Supreme Court in *McDonnell Douglas*, the prima facie ADA claims for disability discrimination and retaliation developed in this circuit do not include a "breach of the duty of fair representation" element.[16]

Just as the Seventh Circuit explained in *Green*, we are not authorized to add another element to a prima facie claim under the ADA, especially when the legislature and our court have both already spoken so clearly on the issue. Nor would we even if we could. If an ADA claim against a union required that the plaintiff show a breach of contract—namely that the union had breached its duty of fair representation to its member—the plaintiff would have no need to sue under the ADA, as she could simply sue for breach of contract. *See Green*, 740 F.3d at 1106. It makes no sense to design a set of prima facie elements that renders the underlying claim unnecessary.

APWU's argument to the contrary confuses the goals of anti-discrimination laws, like Title VII and the ADA, with the purposes of labor laws, like § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, and the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* APWU, quite correctly, explains that federal labor laws impose upon unions

---

[16] *See Snead v. Metro. Prop. & Cas. Ins.*, 237 F.3d 1080, 1087 (9th Cir. 2001) ("[T]o establish a prima facie case of discrimination under the ADA she must show that she: (1) is disabled; (2) is qualified; and (3) suffered an adverse employment action because of her disability."); *see also Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004) ("To establish a prima facie case of retaliation under the ADA, an employee must show that: (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two.").

a "responsibility and duty of fair representation" to their members. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563–65 (1976) (internal quotation marks omitted). Because federal law affords unions a "wide range of reasonableness" and "broad authority," *see id.* at 563–64 (internal quotation marks omitted), this duty is breached only by conduct that is "arbitrary, discriminatory, or in bad faith"—a rather deferential standard, *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). And indeed that deferential standard worked in APWU's favor here: Garity lost her breach of the duty of fair representation claim before the district court and this court.

But anti-discrimination statutes like the ADA cannot be read to parrot a cause of action that already exists under federal labor laws. Title VII and the ADA were enacted decades after those union-boosting laws and imposed additional affirmative responsibilities on unions. Their plaintiff-friendly pleading standards—essentially, to make out a prima facie case under Title VII, the claimant need only make a series of factual assertions before the burden shifts to the defendant, *see McDonnell Douglas*, 411 U.S. at 802–03—make clear that the free hand unions have in other labor matters does not extend to discrimination suits. Unions are uniquely knowledgeable when it comes to collective bargaining agreements and employment contracts, and the law affords them some latitude when adjudicating disputes arising from those contracts; there is no reason to grant them the same deference when it comes to determining if unions discriminated against their members on the basis of a protected classification like disability. What the cases demonstrate is that a plaintiff may have an easier path to proving a Title VII or an ADA claim when she can also show that the union has violated its duty of fair representation. *See,*

*e.g.*, *Beck*, 506 F.3d at 884–85. What this case also shows, however, is that the converse is not necessarily true: A plaintiff may still have a Title VII or an ADA claim even if she can't prove a violation of the labor laws.

Accordingly, we reverse the district court's order dismissing Garity's ADA claims on issue preclusion grounds, and remand for further proceedings as to her discrimination and retaliation claims.[17] We do not pass on the merits of these claims, but note that, prior to the district court's issue preclusion order, it had determined that Garity had proffered sufficient evidence to survive APWU's motion to dismiss.

IV

The judgment of the district court with respect to Garity's claims for disability discrimination and retaliation under the ADA is reversed, and the case is remanded to the district court for further proceedings. Considering our judgment in this opinion and the accompanying memorandum disposition, the parties shall bear their own costs on appeal.

**REVERSED AND REMANDED.**

---

[17] Garity also argues that she has properly stated an ADA claim against APWU for failure to accommodate her disabilities. *See Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003) (per curiam). Because we are unsure if the district court passed on this claim in the first instance, we remand it to the district court for further proceedings. We address the district court's dismissal of Garity's ADA claim for hostile work environment in a separate unpublished memorandum filed with this opinion.