**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3425
_____

WILLIAM J. PEDEN,
                    Appellant

v.

DISTRICT COUNCIL 33 LOCAL 696
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-14-cv-03045)
District Judge:  Honorable L. Felipe Restrepo
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 6, 2016

Before:  AMBRO, GREENAWAY, JR. and GARTH♦, <u>Circuit</u> <u>Judges</u>

(Opinion filed: October 25, 2016)
_____

OPINION*
_____

PER CURIAM

---

♦ The Honorable Leonard I. Garth joined in the opinion of the Court but passed away prior to the filing of the opinion.

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se appellant William Peden appeals the District Court's order granting the defendant's motion for summary judgment. For the reasons detailed below, we will affirm.

In 2014, Peden filed this civil action against his union, Local 696 of District Council 33 (the "Union"), alleging that it had violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and Title VII of the Civil Rights Act of 1964, id. §§ 2000e et seq. The District Court appointed counsel to represent Peden, and, after depositions were taken, the Union filed a motion for summary judgment.

The undisputed evidence revealed that Peden began working for the City of Philadelphia in May 2005. Almost from the start, he had difficulties with regular attendance. On several occasions, the City considered terminating Peden's employment because he had been absent without leave, but the Union successfully intervened and arranged for Peden to return to work each time.

In March 2009, the Union learned that, because of recurring attendance issues, Peden was again facing termination. The union negotiated six months of medical leave, which was set to expire in October 2009. At that time, however, Peden was still unable to return to work. The City refused to extend his leave and told him that his choices were to (1) return to work, (2) voluntarily resign, or (3) apply for non-service-connected disability. Peden was unable to return to work and was ineligible for disability because he had not completed ten years of employment. Therefore, Bobby Davis, the Union's

2

president, recommended that Peden resign. Under the Civil Service Regulations, resigning would permit Peden to be reinstated within a year of his resignation. Peden acknowledged that Davis advised him to resign. Davis testified that he had explained the reinstatement rules to Peden, but Peden denied that. Despite the fact that "everybody was telling [him] to resign," D.C. dkt. #20-5 at 8, Peden wrote to the City and refused to resign. As a result, he was terminated.

After he was fired, Peden, with the Union's help, filed an appeal to the Civil Service Commission. Davis testified that after a member files an appeal, the Union's continued involvement is optional. If a member wants the Union to represent him during a hearing, it is the member's responsibility to request representation. Davis stated that Peden did not ask the Union to attend his hearing (and had indicated while preparing the appeal notice that he was receiving assistance from elsewhere). Peden, meanwhile, claimed (somewhat vaguely) that he had sought union assistance. Ultimately, on the hearing date, Peden appeared without accompaniment from the Union. He apparently informed the Commission that he did not wish to proceed, and his appeal was dismissed for want of prosecution. In his deposition, Peden complained that the Union "turned [its] back" on him during "one of the hardest times in [his] life." Id. at 19. He alleged, broadly, that the Union had discriminated against him.

The District Court granted summary judgment to the Union, concluding that Peden had presented no evidence that the Union had discriminated against him due to his disability (as required to maintain a discrimination claim under the ADA) or his race,

3

color, gender, religion, or national origin (as required to maintain a discrimination claim under Title VII).  The Court also noted that, to the extent Peden sought to present a retaliation claim under either statute, he had failed to show that he had ever engaged in a protected activity.  Peden filed a timely notice of appeal to this Court.

We have jurisdiction under 28 U.S.C. § 1291.  We exercise a plenary standard of review and apply the same standard as the District Court to determine whether summary judgment was appropriate.  State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C., 566 F.3d 86, 89 (3d Cir. 2009).

We agree with the District Court's analysis of this case.  In the District Court, Peden focused mainly on his ADA claim.  To make out a prima facie case of discrimination under the ADA, the plaintiff must show, among other things, that he has suffered an adverse action "as a result of discrimination."  Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998).  Here, Peden presented no evidence to show that the Union's failure to represent him on appeal was motivated by his disability.  His speculation is not adequate to save his claim from summary judgment.  See Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 666 (3d Cir. 2016); see also Uhl v. Zalk Josephs Fabricators, Inc., 121 F.3d 1133, 1137 (7th Cir. 1997) ("Facts, not an employee's perceptions and feelings, are required to support a discrimination claim.").[1]

---

[1] Indeed, in his appellate briefs, Peden states that he does not know why the Union did not represent him.  See Br. at 7; Reply Br. at 3.

Peden's Title VII claim fares no better.  Title VII provides that "[i]t shall be an unlawful employment practice for a labor organization . . . to discriminate against[] any individual because of his race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(c); see Connelly v. Lane Constr. Corp., 809 F.3d 780, 788 (3d Cir. 2016) (explaining that under either the pretext or mixed-motive theory of discrimination, a Title VII "plaintiff must establish that her protected status was a factor in the . . . challenged action").  During his deposition, Peden specifically denied that the Union discriminated against him because of his race, color, religion, sex, or national origin.  See D.C. dkt. #20-5 at 23-24.  Therefore, the District Court did not err in granting judgment to the Union on this claim.[2]

Finally, to show retaliation under either the ADA or Title VII, Peden must show, among other things, that he engaged in protected activity.  See Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006); Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002).  There is no evidence in the record that Peden engaged in any such activity.

Accordingly, we will affirm the District Court's judgment.

---

[2] The parties treated Peden's ADA and Title VII claims as "hybrid" claims.  So to prevail, he had to show both (1) that the Union breached its duty of fair representation, and (2) that the breach was motivated by discriminatory animus.  We question whether Peden actually needs to satisfy part (1) to maintain a claim under the ADA or Title VII. See Goodman v. Lukens Steel Co., 777 F.2d 113, 127 (3d Cir. 1985); see also Garity v. APWU Nat'l Labor Org., -- F.3d ---, 2016 WL 3607049, at *11-12 (9th Cir. July 5, 2016).  In any event, because the District Court granted summary judgment based on Peden's failure to satisfy part (2), which is undoubtedly a legitimate component of a Title VII or ADA claim, we need not decide whether it was proper to consider part (1).